CLARENCE P. BAYNE et al. Appellees, vs. JOHN CINAK et al.
Appellants.

*Opinion filed December 16, 1925—Rehearing denied Feb. 9, 1926.*

1. SPECIFIC PERFORMANCE—*when equity will grant relief against a mistake of law.* As a general rule, a mistake of law, pure and simple, is not ground for relief and cannot be set up to bar equitable relief; but where the evidence in a suit for specific performance of a contract for a conveyance of real estate shows that the defendants, being unlearned in the English language, did not know the meaning of the word "option," as contained in a lease upon which the complainants, who drew the lease, base their right to a conveyance, and that the defendants signed the instrument only after being told by the complainants that the option clause was a mere matter of form, giving complainants first choice if the defendants wanted to sell, equity will allow the defendants to set up such mistake as a defense.

2. SAME—*specific performance often rests in discretion of the court.* Whether specific performance of a contract to convey will be granted or not, in many cases rests in the sound discretion of the trial court.

3. SAME—*when a contract for conveyance will not be enforced.* A contract to sell land, fairly and understandingly entered into, will be enforced as a matter of right, but where there are circumstances of misrepresentation, misapprehension or mistake which would make the enforcement of the contract oppressive or unjust it will not be enforced.

4. SAME—*when acceptance of rent is not a ratification of option for conveyance.* Where a lease contains an option for a conveyance of the property at a stipulated sum, acceptance of rent by the lessors after they have repudiated the option clause and refused to perform it on the ground that it was obtained by fraud and misrepresentation will not constitute a ratification of the option.

APPEAL from the Circuit Court of Cook county; the Hon. IRA RYNER, Judge, presiding.

GUSTAVE NELSON, and FRANK H. PARTRIDGE, (ROBERT B. ARDELL, of counsel,) for appellants.

CLARENCE S. PIGGOTT, and CLAUDE J. DALENBERG, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This appeal is prosecuted from a decree of the circuit court of Cook county for the specific performance of a contract to sell real estate. Appellants were defendants in the court below and appellees were complainants, and they will hereafter be referred to as complainants and defendants.

May 19, 1921, John Cinak, one of defendants, entered into a written agreement with Clarence P. Bayne, one of complainants, for the sale by Cinak to Bayne of a stock of hardware, paints, machines and tools in a building on the premises described as 207 West 119th street, Chicago. By the same instrument Cinak agreed to lease the basement and first floor of the building to Bayne for five years for a rental of $40 per month, and gave Bayne an option to buy "the above real estate and building" at any time during the life of the lease for $8500. A written lease was signed by the parties June 21, 1921, by which Cinak and his wife, Minnie, leased to Bayne and George L. Ewing, the other complainant, the basement and first floor of the building at 207 West 119th street for a term of five years from date at a stipulated rental, payable in monthly installments. The lease contained a clause giving complainants "the option to purchase the real estate known as 207 West 119th street at any time during the life of this lease, at a price not to exceed $8500." October 24, 1923, complainants tendered Cinak and wife $8500 in cash and demanded of them a good and sufficient warranty deed conveying to complainants a clear and marketable title to the real estate. The tender was not accepted and complainants filed their bill praying for specific performance. The Cinaks did not own the legal title to the property at the time the lease and option were executed nor at the time the bill was filed. They had contracted to buy the property in 1919 from Gerit and

Regina Pon. The Cinaks and Pons entered into a contract for the sale of the property to the Cinaks for $500 cash, the assumption of a mortgage of $2500 on the premises and the payment of $2800 in monthly installments of $55. Upon the payment of the final installment the Pons were to execute a deed to the Cinaks. Pons conveyed the title to Harry and Bertha Ose subject to the Cinak contract, which was on record, and they were made defendants. The bill prayed that the Cinaks be decreed to convey complainants a good and unincumbered title in fee simple, or, in the alternative, if the Cinaks were only the equitable owners, that they be decreed to make conveyance and assignment of their equitable title upon payment of the purchase price, with deduction of the amount of outstanding incumbrances and liens. Subsequently complainants filed a supplemental bill setting up the conveyance by Pons to Harry and Bertha Ose. The Oses were made defendants to it, and the supplemental bill alleged they threatened to forfeit the contract with the Cinaks for default in making the payments required, and that the purpose was to defeat the rights of complainants under their option contract.

It is unnecessary to set out the answers of defendants, except to say that there was no denial of signing the two instruments referred to. The defenses interposed upon the answers are, that by fraud and misrepresentations complainants secured the option to purchase, and it is therefore not enforcible; that the Cinaks agreed only to convey the title they had at the time the contract was made; that they occupied the upper story of the building as a homestead and there was no agreement in writing to release it, and the contract is not enforcible as to the homestead. Some other objections to the decree are made, but those, we believe, are the most important ones, and the view we take of the case renders unnecessary a discussion of all the errors assigned.

John Cinak testified that at his store in the spring of 1921 complainant Bayne presented him the contract to sign

for the sale of the hardware stock and the lease of the building. He read the lease over, and when he came to the word "option" he asked Bayne what it meant. Bayne said it was a matter of form; that in case Cinak wanted to sell it gave him (Bayne) the first choice to buy. Cinak told Bayne he did not want to tie himself down with an option, and Bayne repeated it was a matter of form and only gave the right to Bayne of the first choice to buy if Cinak wanted to sell. Cinak told Bayne he would take $8500 "for my share." After that he signed the contract. He next saw Bayne in May, 1921, and Bayne asked him what interest he had in the place. Cinak said he would take $8500 cash for his interest. Bayne proposed to trade a building he owned for Cinak's building, but Cinak would not agree. He next saw Bayne at the Roseland Bank on June 21, when he and his wife signed the lease. His wife read the lease and asked about the meaning of the option. Cinak told her it was all right; that in case they wanted to sell it gave complainants the first right to buy, and Bayne explained it the same way. He first learned complainants claimed they had a contract for the purchase of the premises July 5, 1923. Complainants came to Cinak's porch and said they were there to buy the house. Cinak said it was not for sale, and Bayne told him to read his contract; that if he didn't make the sale they would take it to court; that a contract was a contract.

Cinak was born in Hungary and has been in this country twenty-one years. He is now forty-two years old. He went to school in Austria-Hungary but never studied the English language. He never went to school in this country.

Joseph Sommer testified he was present at Cinak's place of business in May, 1921, and heard a conversation between Cinak and Bayne. Cinak's daughter was also present. Bayne gave Cinak a paper he wanted him to sign. Cinak read it over, stopped, and asked Bayne what "option" meant. Bayne said it was a matter of form; that in

case Cinak wanted to sell it gave Bayne the first choice to buy. Cinak told Bayne he wanted "for my share $8500; I will take $8500 for my share." He read over the contract again, and said if that was all "option" meant he would sign it, but he did not want to tie himself down for five years. He signed the contract and gave it to Bayne. Vilma Cinak, a daughter of John Cinak, seventeen years old and a stenographer, testified to substantially the same thing as the witness Sommer. Minnie Cinak, the wife, testified she first saw the lease at the bank at the time they signed it. She read the lease over and inquired what "option" meant, and Bayne said it only meant if they wanted to sell he should have the first choice to buy.

Bayne denied having had any conversation with either of the Cinaks about the meaning of the word "option," and denied that he ever said it was a matter of form and only gave him the first choice to buy if they wanted to sell. Ewing and one of complainants' attorneys testified that they were at the bank when the lease was signed and that they heard no inquiry made by Mrs. Cinak about the meaning of the word "option" and heard no talk of any kind about that subject.

The Cinaks contend the above testimony proves their charge that the signing of the contract and lease was procured by fraud and misrepresentation; that the fraud consisted in misrepresenting the meaning of "option" and inducing them to sign the contract and lease when complainants were informed by Cinak that he did not want to bind himself to sell. Complainants' reply to that contention is that the Cinaks knew the word "option" was in the two instruments and must be presumed to have known its legal effect, and that if there was any misrepresentation it was one of law and not of fact. They further deny the proof shows there was any misrepresentation. The testimony is conflicting as to what was said upon the question of what "option" meant. Cinak, his daughter, and Sommer, his

brother-in-law, testified that at Cinak's house, when Bayne brought the proposed contract for the sale of the hardware stock and for the lease, in answer to Cinak's inquiry as to the meaning of the word, Bayne replied, in substance, that it was a mere matter of form to give him the first right to buy if Cinak should want to sell. That conversation is denied by Bayne. Cinak and his wife testified the wife read the lease before signing it and asked to have its meaning explained, and that Bayne explained to her the same as he had previously explained it to her husband. That was denied by both complainants and one of their attorneys. On the mere question of the number of witnesses the advantage was with the Cinaks, and upon the question of the interest of the witnesses in the case no advantage was with either side. To our minds the weight and preponderance of the proof show the misrepresentation was made. Was it such a fraud as will avoid the option clause?

The rule is well understood that in general a mistake of law, pure and simple, is not ground for relief and can not be set up to bar equitable relief. The subject is fully discussed in Pomeroy's Equity Jurisprudence. (Vol. 2,— 3d ed.—beginning with sec. 842.) In section 847 the author says: "Whatever be the effect of a mistake pure and simple, there is no doubt that equitable relief, affirmative or defensive, will be granted when the ignorance or misapprehension of a party concerning the legal effect of a transaction in which he engages, or concerning his own legal rights which are to be affected, is induced, procured, aided or accompanied by inequitable conduct of the other parties. * * * When the mistake of law is pure and simple the balance held by justice hangs even; but when the error is accompanied by any inequitable conduct of the other party it inclines in favor of the one who is mistaken. The scope and limitations of this doctrine may be summed up in the proposition that a misapprehension of the law by one party, of which the others are aware at the time of entering into

the transaction but which they do not rectify, is a sufficient ground for equitable relief. A court of equity will not permit one party to take advantage and enjoy the benefit of an ignorance or mistake of law by the other which he knew of and did not correct. While equity interposes under such circumstances, it follows *a fortiori* that when the mistake of law by one party is induced, aided or accompanied by conduct of the other more positively inequitable, and containing elements of wrongful intent, such as misrepresentation, imposition, concealment, undue influence, breach of confidence reposed, mental weakness or surprise, a court of equity will lend its aid and relieve from the consequences of the error." The entire discussion of the subject by the author is illuminating, and the rules announced by him have been adopted by all courts, including the courts of this State. If the parties in the instant case had mutually agreed upon the option clause in the contract and the lease as expressing their agreement but were mistaken only as to the legal effect of the clause, and no inequitable conduct of either one was responsible for the language used in the clause, the fact that they were mistaken as to the legal effect of it would not be ground for equitable relief, either offensive or defensive; but here the weight of the proof shows the contract and the lease were prepared by complainants; that it was in their language, and that the Cinaks, before signing it, asked an explanation of what the option clause meant, and were told it was a mere matter of form and meant only that in case they desired to sell the property complainants were to be given the first chance to buy it, when at the time complainants knew that was not the legal meaning of the clause and knew that the Cinaks signed relying upon complainants' representation as to what the clause meant. We think the case falls clearly within the rules announced by Pomeroy.

Complainants are seeking to enforce specific performance of the contract. Whether that remedy shall be granted

or not, in many cases rests in the sound discretion of the court. A contract to sell land, fairly and understandingly entered into, will be enforced as a matter of right, but where there are circumstances of misrepresentation, misapprehension or mistake which would make the enforcement of the contract oppressive or unjust it will not be enforced. *Keating* v. *Frint,* 291 Ill. 423, and cases there cited; *Gronowski* v. *Jozefowicz,* id. 266; *Carver* v. *VanArsdale,* 312 id. 220.

The property which the contract and lease gave appellees the option to purchase was described as "the real estate known as 207 West 119th street." Cinak's title was only an equitable title by virtue of a contract to purchase and pay for the property in installments. He testified, and introduced proof to corroborate him, that he only proposed to sell "his interest." We do not base our decision upon the proposition that for that reason, alone, Cinak might defeat specific performance by conveyance of the fee after receiving the consideration agreed to be paid, less deductions for existing liens and claims; but it must be conceded that when that question is considered in connection with the question whether he understandingly executed the contract and lease, the case is not one of such understanding, clearness and fairness that a court of equity will enforce specific performance.

The Cinaks accepted from complainants three installments of rent after the tender and demand for a deed were made, and complainants insist this was a ratification of the option clause for the sale. In our opinion that cannot be correct. The lease for the building was valid, and obligated complainants to pay the rent for its use, which they were enjoying. The Cinaks did not by accepting payment of rent ratify the option for sale if it was obtained by fraud and misrepresentation. The rent was paid by complainants knowing the Cinaks repudiated the option and refused to perform it. There was no ratification.

Other questions are discussed in the case, but we think the circuit court should have denied specific performance

on the ground that the proof showed the contract and lease were not fairly and understandingly entered into by the Cinaks.

The decree is reversed and the cause remanded, with directions to dismiss the bill.

*Reversed and remanded, with directions.*