HANNA LUBOWSKY, Indiv. and as Personal Representative of the Estate of Dan Lubowsky, Deceased, Plaintiff and Petitioner-Appellee, *v.* SKOKIE VALLEY COMMUNITY HOSPITAL *et al.,* Defendants.—(THE UNIVERSITY OF CHICAGO, Defendant and Respondent-Appellant.)

First District (2nd Division)    No. 78-1775

Opinion filed December 26, 1979.

Menk and Bishop, of Chicago (John Cadwalader Menk, Ronald T. Bishop, and John T. Mehigan, of counsel), for appellant.

John D. Hayes, of John D. Hayes & Associates, Ltd., of Chicago, for appellee.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

The salient issue in this appeal is whether an order entered on April 26, 1976, dismissing "with prejudice" certain defendants from a suit for alleged medical negligence, which order was based upon "* * * oral motion and by agreement * * *" of the parties, should have been vacated upon a petition pursuant to section 72 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 72). On July 26, 1978, the trial court vacated the 1976 order above described and reinstated one of the previously dismissed defendants as a party to the lawsuit. For the reasons which follow, we affirm.

Plaintiff filed her medical negligence action on March 17, 1972, charging the wrongful death of her decedent on February 21, 1972, naming as original defendants Skokie Valley Community Hospital and three physicians who had staff privileges there, Doctors Milton Goldberg, Donald Cohen and Melvin Goldstein.[1] On February 21, 1974, plaintiff joined the University of Chicago (hereinafter "University") and Dr. George E. Block as additional defendants in an amended complaint. On April 26, 1976, one of several status hearings was held by the trial court with counsel present, during the course of which, according to recitations contained in the 1978 *vacatur* order, the trial court reviewed the evidence produced by discovery completed to that date. The evidence indicated to

---

[1] Dr. Goldstein was dismissed from the lawsuit in 1976 by plaintiff, and neither Skokie Valley Community Hospital nor Doctors Cohen or Goldberg are involved in this appeal.

the court that "short bowel syndrome," as the cause of death, was dependent upon whether the amount of bowel removed from decedent at Skokie Valley Community Hospital was greater than reported. The court suggested to plaintiff's counsel that because Dr. Block and the University treated decedent after he was treated at Skokie Valley Community Hospital, they did not appear to have been implicated in the alleged causative negligence, and asked counsel to agree to their dismissal. The "oral motion" to which the order refers was made by counsel for the University and Dr. Block. Plaintiff's counsel acceded to the trial court's suggestion and the order of dismissal was thereafter entered.

During continuing discovery, plaintiff's counsel deposed a Dr. Marshall S. Sparberg in November of 1976, who recommended that the records be reviewed by a Dr. Richard Kessler, a board-certified physician and surgeon, professor of surgery and cell biology at New York University and assistant chief of surgery at the Veterans Administration Hospital in Manhattan, New York. The records were submitted to Dr. Kessler who reviewed them and on March 7, 1977, after apologizing for "* * * taking so long to send you a report * * *," gave as his opinion that the underlying cause of decedent's death was "stagnant bowel syndrome," rather than "short bowel syndrome."[2] "Stagnant bowel syndrome," he stated, had not been theretofore diagnosed or treated properly while decedent was hospitalized at the University. Dr. Kessler's report was verified by affidavit and was submitted in support of plaintiff's section 72 petition. The Kessler diagnosis differed from the deposition testimony previously given by Doctors Block and Sparberg, who had indicated that the cause of death was "short bowel syndrome" upon which evidence the trial court and plaintiff's counsel had in part relied.

Counsel for the University was alleged to have been made aware of the substance of Dr. Kessler's findings as early as April or May of 1977. On September 12, 1977, plaintiff moved to vacate the dismissal as to the University, submitting an affidavit in support of the motion on October 6,

---

[2] The question of whether the evidence supports the preliminary thesis of "short bowel syndrome," or plaintiff's current thesis of "stagnant bowel syndrome" is not raised in this appeal. In the former syndrome, according to Dr. Kessler, because decedent had undergone six operations which caused the removal of extensive portions of his intestinal tract, it was thought that the remaining portions of his intestines were of insufficient length to digest enough nutrients to sustain normal bodily functions, weakening the body, making it susceptible to infections, and eventually leading to death from pneumonia. The question raised by Dr. Kessler was why decedent starved to death when he possessed five feet of normal small bowel after his last surgery. He theorized that the remaining bowel was sufficient in length but diseased or partially obstructed, containing blind loops or pouches, resulting in stagnation of the intestinal contents with an overgrowth of bacteria. This condition interfered with the digestion of food stuffs, leading to malasorbtion and starvation if not treated. Dr. Kessler stated, "I wouldn't expect most physicians to recognize the stagnant bowel syndrome. However, I find it unacceptable for * * * [the University's] gastroenterologist not to recognize it, especially when the diagnosis was staring him in the face * * *."

1977. The University filed a motion to strike and dismiss supported by a memorandum in opposition to plaintiff's motion to vacate on October 19, 1977. On November 7, 1977, the motion to vacate was denied, the order stating that the motion was not being construed as a section 72 petition. Plaintiff then filed such a petition on January 6, 1978, supported by the affidavits of Dr. Kessler and plaintiff's counsel, and accompanied by a memorandum, to which defendant filed a motion to strike and dismiss, together with a memorandum in support thereof. A hearing on the section 72 petition and opposing motion was held on July 5, 1978, and a written opinion and order was filed by the trial court on July 26, 1978, allowing the petition. The order vacated the order of dismissal of April 26, 1976, as to defendant University; directed that plaintiff provide the University with a copy of the transcript of Dr. Sparberg's deposition; directed that plaintiff produce Dr. Sparberg for future deposition at the office of counsel for the University at plaintiff's expense; and required counsel for plaintiff, if requested, to arrange for Dr. Kessler's deposition at a time and place agreeable to the parties. It is from this order that the University appeals.

The University makes two principal points on appeal: first, that a judgment entered by consent of the parties cannot be vacated by motion of one of them; and second, that plaintiff's section 72 petition fails to show a meritorious claim or due diligence.

■■ With respect to the first point, the University argues that the rule of law is long established and well recognized which considers a judgment entered by consent to be an agreement by the parties which cannot be vacated on motion by one of them, citing 23 Ill. L. & Prac. *Judgments* §3, at 118, and §172, at 261 (1956); *Jackson v. Ferolo* (1972), 4 Ill. App. 3d 1011, 1014, 283 N.E.2d 247; *Peters v. Hokin* (1976), 41 Ill. App. 3d 995, 997, 355 N.E.2d 205; *Pierce v. MacNeal Memorial Hospital Association* (1977), 46 Ill. App. 3d 42, 48, 360 N.E.2d 551; and *Filosa v. Pecora* (1974), 18 Ill. App. 3d 123, 127, 309 N.E.2d 356. The University maintains further that a consent decree as a general rule is conclusive upon the parties and cannot be amended or vacated by one of the parties in the absence of a showing that the consent order resulted from fraudulent misrepresentation; or coercion in making the agreement; or the incompetence of a contracting party; or gross disparity in the position or capacity of the parties. As far as they go, the cases above cited exemplify the rule in Illinois. Plaintiff's section 72 petition raised none of the aforesaid grounds as support for the relief she sought, but rather was based upon the assertions that the dismissal order was entered by reason of a misapprehension of fact by the court and counsel for plaintiff; that if the additional fact had been known, the court would not have entered the agreed order; and that plaintiff's failure to discover the true fact was not

due to lack of diligence or, alternatively, that failure of plaintiff's counsel to ascertain the true fact was "excusable failure." We must therefore consider whether such grounds for relief are sufficient upon which to support the 1978 order vacating the 1976 dismissal order.

■■■ A consent judgment is generally regarded as one entered by a court reciting a settlement agreement reached as an independent undertaking by the parties which may supersede pleadings and evidence and limit the relief to be granted. (*Clark v. Standard Life & Accident Insurance Co.* (1979), 68 Ill. App. 3d 977, 983, 386 N.E.2d 890; *Pierce v. MacNeal Memorial Hospital Association* (1977), 46 Ill. App. 3d 42, 50; *Filosa v. Pecora* (1974), 18 Ill. App. 3d 123, 127.) Because it is not a judicial determination of the rights of the parties and does not purport to represent the judgment of the court, a consent order ordinarily cannot be reviewed on appeal. (*Bergman v. Rhodes* (1929), 334 Ill. 137, 143, 165 N.E. 598.) The rule appears to have been first articulated in the early chancery cases in which the parties arriving at their agreement exchanged *quid pro quo* and would not later be heard to question their own agreement, particularly where a change of position by the parties followed the entry of the decree. For example, in *Webb v. Webb* (1676), 28 Car. 2, 3 Swanst. 656, a son sought an accounting of a personal estate and stipend of which his father was trustee. A consent decree was entered in which the father conveyed to the son the funds in return for which the son was to pay the father an annual emolument and release the father of all accounts in arrears. This decree was held to foreclose father's bill of review seeking to reverse the decree upon the maxims *concensus tollit errorem* and *volenti non fit injuria*. In *Armstrong v. Cooper* (1850), 11 Ill. 540, our supreme court noted that the parties there seeking a bill of review had been authorized to represent the interests of certain heirs one of whom was their attorney and administrator of an estate. Through the attorney they proposed to the defendant in error that if certain conditions were met, they would permit and consent to the decree to be taken. In refusing to consider the bill of review, the supreme court stated that (11 Ill. 540, 542): "A decree made by consent cannot be appealed from, nor can error be properly assigned upon it. Even a rehearing can not be allowed in the suit; nor can the decree be set aside by a bill of review."

■■■ The rule was modified subsequently, however, to permit equitable relief from such decrees when, in *Flagler v. Crow* (1886), 40 Ill. 414, 417, and *Cox v. Lynn* (1891), 138 Ill. 195, 204, 29 N.E. 857, the supreme court observed that consent decrees could be set aside by bills of review, but only upon a showing of fraud or mistake. The rule by this time was also being recognized by text writers. In Daniell's Chancery Pleading and Practice, 1894 edition, the writer observed that a bill of review or a bill in the nature of a bill of review could be brought upon error in law

appearing on the face of a consent decree or "❋ ❋ ❋ upon some new matter which has been discovered after the decree, and could not possibly have been used when the decree was made."[3] (2 E. Daniell, Chancery Pleading & Practice 1559 (6th Am. ed. 1894).) In *Paine v. Doughty* (1911), 251 Ill. 396, 400, 96 N.E. 212, the exceptions of fraud or mistake were again recognized as grounds for relief from consent decrees, with the corollary that mistakes of law not induced by the opposite party would not satisfy the exception. (251 Ill. 396, 401.) The mistake of fact to be pleaded in a bill of review was further explicated in *Harrigan v. County of Peoria* (1914), 262 Ill. 36, 44, 104 N.E. 172, which stated that "[b]efore a bill of review can be filed for newly discovered evidence it must clearly be shown ❋ ❋ ❋ that the new matter was discovered after the original decree was entered and could not have been discovered before by the exercise of reasonable diligence." Although the cases cited by the University, *Jackson v. Ferolo, Peters v. Hokin, Pierce v. MacNeal Memorial Hospital Association,* and *Filosa v. Pecora* do not mention mistake of fact as a ground on which to set aside consent decrees, the facts presented in those cases simply did not involve prayers for such relief based upon newly discovered evidence. As we have seen, this remedy was recognized and available almost from the time the rule was first postulated in Illinois. More recently, *City of Des Plaines v. Scientific Machinery Movers, Inc.* (1972), 9 Ill. App. 3d 438, 443, 292 N.E.2d 154, cited by plaintiff, held that relief can be granted with respect to consent decrees or orders under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 72), as was done in the present case, the court having stated:

> "Before the enactment of this provision, consent decrees could be collaterally attacked only through bills of review and were specifically immune from challenges by appeal or writ of error. (*Sims v. Powell,* 390 Ill. 610, 62 N.E.2d 456). Thus, consent decrees could previously be vacated only upon a showing of (1) errors of law apparent on the face of the record, (2) newly discovered evidence, or (3) fraud in the procurement of the decree. (See Smith-Hurd Annotated, ch. 110, §72, Joint Committee Comments). With the enactment of Section 72, however, timely challenges to consent decrees must be judged by the broad equitable considerations which govern all Section 72 petitions."

---

[3] *Footnote 3 to which the text makes reference notes that* "[t]o authorize a bill of review for new matter which has arisen 'in time after the decree,' *it must be matter which was in existence at the time the decree was rendered, but was not known to the party till afterwards. Bledsoe v. Carr,* 10 Yerg. 55; *Winchester v. Winchester,* ❋ ❋ ❋ [1 Head. (Tenn.), 460]; *United States v. Samperyac,* 1 Hemp. 118; *Bush v. Madeira,* 14 B. Mon. 212. ❋ ❋ ❋" (Emphasis added.)

See also *Taylor v. City of Chicago* (1975), 28 Ill. App. 3d 962, 965, 329 N.E.2d 506.

We turn now to the facts and circumstances of the case *sub judice* with the foregoing rules and principles as frames of reference. The opinion and order of *vacatur* entered on July 26, 1978, notes that the order of April 26, 1976, dismissing Dr. Block and the University was precipitated by: the trial court's analysis of the evidence; its communication to plaintiff's counsel that the evidence did not seem to implicate those parties; and its suggestion to counsel that those parties be dismissed from the lawsuit. Although counsel for the University has indicated that the factual assertions and descriptions set forth in the 1978 opinion and order are not entirely accurate, that assertion appears to be based primarily upon the proposition that the deposition of Dr. Block did not indicate that decedent's demise had been caused by "short bowel syndrome," as the court had stated. We will return to this argument presently. No dispute exists, however, concerning the motion to dismiss made by Dr. Block and the University at the 1976 proceedings and the urging by the trial court that they be dismissed without resort to formal remedies. The court stated in the opinion and order in part:

> "It is this court's philosophy that litigation should be handled expeditiously. Parties sued under a misapprehension of the facts ought not be put to unnecessary expense of protracted litigation. I do not insist on a party's waiving formal procedures, but I do encourage the lawyers who appear before me to obtain these goals without the necessity of rigid adherence to formalities must not defeat the administration of justice [*sic*].
>
> * * *
>
> * * * It should be noted that the pleadings included allegations relating to post operative care of the patient at the University of Chicago and had summary judgment proceedings been required, defendant would have had to demonstrate that there was no genuine issue of material fact, and that an order of summary judgment would not have been appealable absent a special finding. Such a finding would not likely have been made, at least at that time, since it was known there would be additional discovery and probably more expert witnesses. But for plaintiff's not insisting on a motion for summary judgment the court would be presented merely with a motion to vacate an order as to a party yet within its jurisdiction."

■ From the foregoing it clearly appears that the 1976 order was not the usual type of agreement, stipulation, "o.k." by counsel or acquiescence by parties to a consent decree or order, reached as an independent

undertaking by them without intercession by the court, based upon a *quid pro quo*, and brought to the court by the parties merely for its imprimatur; rather, the agreement in this case was the result of active participation by the court with counsel seeking to dispose of lengthy and complicated litigation. Such judicial activity is salutary and commendable and is not intended to be discouraged by this opinion. When, as here, however, the court's analysis of the evidence proceeds from a possibly misconceived perspective, and one is encouraged thereby to dismiss parties and discouraged from insisting upon available remedies in resisting such dismissal, the potential for an unjust result is evident; if the court were to have refused to reopen the case for presentation of newly discovered evidence which might alter the outcome, such potential would have been heightened and the opportunity to do equity diminished. A petition to vacate under section 72 invokes the equitable powers of a court; its decision will not be disturbed unless the sound legal discretion of the court has been abused. (*M.L.C. Corp. v. Pallas* (1978), 59 Ill. App. 3d 504, 510, 375 N.E.2d 560; *Hogan and Farwell, Inc. v. Meitz* (1976), 45 Ill. App. 3d 216, 220, 359 N.E.2d 740; *City of Des Plaines v. Scientific Machinery Movers, Inc.*) Under the particular circumstances of this case, we find no abuse of discretion in the trial court's *vacatur* of the 1976 order of dismissal.

The next point raised by the University is that plaintiff's petition fails to show sufficient grounds for relief under section 72, a meritorious claim or due diligence, because, although the original complaint was filed one month after decedent's death, Dr. Block and the University were not joined as additional defendants until the day before the statute of limitations tolled, were not dismissed until two years later, and plaintiff did not seek to rejoin the University until 1½ years after that, which is alleged to demonstrate the lack of a meritorious claim and absence of due diligence, citing *Carroll & Neiman, Inc. v. Silverman* (1975), 28 Ill. App. 3d 289, 328 N.E.2d 205; *Fennema v. Vander Aa* (1969), 42 Ill. 2d 309, 247 N.E.2d 409; *Windmon v. Banks* (1975), 31 Ill. App. 3d 870, 335 N.E.2d 116; and *Johnson v. Hawkins* (1972), 4 Ill. App. 3d 29, 280 N.E.2d 291. The foregoing cases deal principally with procedural omissions by the parties there involved and are factually inapposite to the issues presented by this appeal, a misapprehension of fact and timeliness in discovery and presentation thereof. Considering first the alleged absence of grounds for relief, the University contends that no misapprehension of facts existed at the time the dismissal order was entered, for two reasons. First, as counsel for the University orally argued, Dr. Block in his deposition, upon which court and counsel relied, does not testify that decedent had exhibited indicia of "short bowel syndrome" *per se*. In its brief, the University

assigns as a second reason that Dr. Kessler's opinion was always available to plaintiff who simply neglected to obtain it within a reasonable time. As to the first, Dr. Block's deposition reveals several instances in which he directly alluded to decedent's "short bowel syndrome," for example, with respect to its initial manifestation in decedent, as to its cause, and insofar as its severity was concerned. These references are sufficient bases upon which court and counsel could have concluded that "short bowel syndrome" was indeed the cause of decedent's inanition and cachexia leading to his death. Contrasted with Dr. Kessler's opinion that "stagnant bowel syndrome" involving possible misdiagnosis and treatment of decedent while under the care of the University was the cause of death, the assumption by court and counsel that "short bowel syndrome" was the causative factor not involving the University qualifies as a possible misapprehension of fact.

With regard to Dr. Kessler's diagnosis always having been available to plaintiff had sufficient diligence been exercised by her counsel, it appears from the section 72 affidavit of plaintiff's counsel that the first suggestion of the need for another diagnosis came at the time of Dr. Sparberg's deposition, taken November 17, 1976, after the University had been dismissed. Failure to contact a surgical expert prior to the time his expertise could have been reasonably anticipated does not constitute a lack of diligence under the facts of this case, wherein the testimony of a renowned surgeon of Dr. Block's stature, as well as plaintiff's own medical expert, Dr. Sparberg, had indicated a condition of a different character as the causative factor. We note parenthetically that the taking of Dr. Block's deposition was delayed until March 1976, apparently due to his ill health, although noticed by plaintiff for August of 1974. Nor is the University's claim persuasive that the passage of time between plaintiff's receipt of Dr. Kessler's report and her notification thereof to its counsel, orally in April or May of 1977, and in writing by July of that year, constitutes such evidence of indifference and inattention as to evince a want of diligence which should preclude a hearing on the merits of her claim. Further, we have reviewed as much of the record as has been filed in this appeal, which we may do for the purposes of affirming a judgment. (See, *e.g.*, *Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379, 386, 385 N.E.2d 664.) The record reveals ongoing activity by all parties in discovery preparation of the case for trial. When considered in context with these activities, we believe that the requisite diligence on plaintiff's behalf is sufficiently apparent. The order of the trial court properly recognizes and substantially ameliorates such prejudice to the University as may have accrued by virtue of its absence from the case during the interim period, in requiring that discovery accomplished after the University's dismissal

and to be accomplished upon its reinstatement proceed expeditiously at plaintiff's expense in part.

■■ For the foregoing reasons we find that the order from which defendant University appeals was not contrary to the sound discretion of the trial court nor an abuse thereof and must accordingly be sustained.

Affirmed.

STAMOS, P. J., and DOWNING, J., concur.