CHERYL C. BURCHETT, Plaintiff-Appellee, v. FRANCIS J. GONCHER, JR., Defendant-Appellant.

First District (5th Division) Nos. 1—90—0509, 1—90—2100, 1—91—1664 cons.

Opinion filed December 20, 1991.

Herbert A. Glieberman, of Herbert A. Glieberman & Associates, of Chicago, for appellant.

Norbert N. Rosenthal, of Norbert N. Rosenthal & Associates, Ltd., of Chicago, for appellee.

JUSTICE MURRAY delivered the opinion of the court:

Cheryl Burchett (Cheryl) brought a civil lawsuit alleging that Francis Goncher, Jr. (Goncher), defendant, was the father of her daughter Christa. The litigation was settled by an agreement of the parties in the form of an agreed order, which agreed order was approved and entered by the trial court. The facts are undisputed. They are as follows.

On March 11, 1988, Cheryl filed a complaint for paternity alleging that Goncher was the biological father of her minor child, Christa Goncher (Christa), born out of wedlock on December 11, 1987.

On April 29, 1988, the trial court ordered Goncher to submit to a blood test for the purposes of determining the possibility of his paternity of Christa. Test results indicated that Goncher stood a 99.84% chance of fathering Christa. The results further indicated that 99.77% of all other men could be excluded as Christa's natural father. Thus, the testers concluded that "paternity is practically proved."

On November 17, 1989, a pretrial took place with no court reporter present. Both parties had counsel present. After the pretrial conference, the parties negotiated the terms of a final settlement. The

terms of the settlement were reduced to the form of an agreed order settling all outstanding issues. The order was approved in writing by each of the parties and was entered by the trial court judge.

By the terms of the November 17, 1989, agreed order, Goncher was to pay Cheryl the aggregate sum of $3,000 per month for the support of Christa and Heather Goncher (Heather) until the youngest child reaches the age of 19½ or is emancipated, whichever is the first to occur. In addition, Goncher was ordered to pay Cheryl $70,000 in satisfaction of child support arrearages accrued since the birth of Christa for her support, all pre/post natal care for Christa, which approximated $6,000, and he was to be responsible for all extraordinary medical, dental, optical, and psychological expenses of Christa and Heather. The order further provided that Goncher was to be responsible for all college or trade school expenses for the children as well as $20,000 in attorney fees to Cheryl's attorney.

As of the date of the agreed order Christa was not yet two and no prior support order had been entered. In a previous paternity action, case No. 85 M1 99911, Goncher was ordered to pay $266.67 per month for the support of Heather. On October 11, 1987, this support for Heather was raised to $310 per month. The record contains no evidence or findings as to Goncher's income, Cheryl's income, Christa's financial needs or Heather's financial needs.

On November 22, 1989, five days after the entry of the agreed order of November 17, Goncher filed a motion to vacate the November 17, 1989, order. In his motion Goncher contended that he had mistakenly believed that the figure recommended by the trial judge was the statutory amount required for the support of two children. In addition Goncher charged that $3,000 represented 50% of his income, rather than 25% as specified in that statute. The trial court found that there had been a unilateral mistake on Goncher's part, but there was no newly discovered evidence, fraud, or coercion and denied the motion on January 12, 1990.

On February 5, 1990, following a substitution of attorneys for defendant, Goncher filed an emergency motion to set aside and reconsider the court's orders of January 12, 1990, and November 17, 1989, pursuant to sections 2—1203 and 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, pars. 2—1203, 2—1401). In the alternative, Goncher requested the trial court to modify the judgment order of November 17, 1989, pursuant to "chapter 40, par. 2516." This motion was based on the alleged unconscionability of the order; the court's failure to take evidence or to make findings as to the needs of the children or their parents' ability to contribute; the failure

of the order to allocate the amount between the children; and the provision for arrearages of $70,000 for Christa's support. Cheryl filed a motion to dismiss the section 2—1401 motion. On July 5, 1990, the court denied the section 2—1401 motion, ruling that the order of November 17, 1989, was fair and equitable and agreed to by both parties.

Goncher filed two appeals: the first is an appeal from the agreed order of November 17, 1989, and the order of January 12, 1990, denying defendant's motion to vacate the November 17, 1989, order; the second is an appeal from the order of July 5, 1990, denying the section 2—1401 motion. The two appeals were consolidated by this court.

For the following reasons, we affirm the decisions of the trial court.

## NOVEMBER 17, 1989, ORDER

Goncher argues that his motion to vacate the agreed order should have been granted due to the fact that he agreed to the order because he mistakenly believed the order complied with the guidelines set forth in the Illinois statute relating to child support. (Ill. Rev. Stat. 1987, ch. 40, par. 505.) He further argues that the November 17, 1989, order is unconscionable.

■ We are first met with a question of the court's jurisdiction over an agreed order. As a general proposition, a consent decree is not appealable because it does not constitute a resolution of the parties' rights but is a mere recordation of their private agreement. (*People ex rel. Lampkin v. Brown* (1980), 81 Ill. App. 3d 869, 401 N.E.2d 1171; see also *People ex rel. Fahner v. Colorado City Lot Owners & Taxpayers Association* (1985), 106 Ill. 2d 1, 476 N.E.2d 409.) Once a consent decree has been entered it is generally considered to be binding on the parties and it cannot be amended or varied without the consent of each party. (*Dunaway v. Storm* (1975), 30 Ill. App. 3d 880, 334 N.E.2d 825.) However, this is not without exception. A circuit court has potential authority to modify a consent decree if circumstances so warrant. A court of equity does not abdicate its power to revoke or modify its mandate if it is satisfied that what it was doing has been turned through changing circumstances into an instrument of wrong. (*Fahner*, 106 Ill. 2d at 9, 476 N.E.2d 409, citing *United States v. Swift & Co.* (1932), 286 U.S. 106, 114-15, 76 L. Ed. 999, 1006, 52 S. Ct. 460, 462.) A consent decree can be set aside only by agreement of the parties or upon a showing that it resulted from fraudulent misrepresentation, coercion, incompetence of one of the parties, gross disparity in the parties' bargaining positions, or newly

discovered evidence. (*Kandalepas v. Economou* (1989), 191 Ill. App. 3d 51, 54, 547 N.E.2d 496; *In re Haber* (1981), 99 Ill. App. 3d 306, 425 N.E.2d 1007.) The trial court in the present case potentially had the authority to modify the consent decree, but first it had to determine whether the circumstances warranted the court's modification of the decree.

For the following reasons, we find that the trial court properly denied Goncher's motion to vacate the November 17, 1989, order.

Goncher argues that the November 17 order is flawed in every respect. He states that in addition to requiring him to pay approximately half his net income to support two children, the order fails to allocate the money between the children; the order fails to provide for abatement of any support upon the older child's emancipation; the order fails to itemize the financial needs of the children; the order fails to recite the incomes of the parents so that if circumstances change there would be basis for modification; and, finally, the order fails to indicate whether the guidelines were considered or why the support figures deviate substantially from those guidelines.

Goncher argues that section 14 of the Illinois Parentage Act of 1984 (Ill. Rev. Stat. 1987, ch. 40, par. 2514) specifies that in determining the amount of any child support award, the court shall use the guidelines and standards set forth in section 505 of the Illinois Marriage and Dissolution of Marriage Act (Act). Goncher correctly asserts that section 505 of the Act allows the court to order either or both parents to pay an amount that is reasonable and necessary for a child's support. (Ill. Rev. Stat. 1987, ch. 40, par. 505.) The Act specifies that the court shall determine a minimum amount of support by using the guidelines, which call for 25% of the parent's net income for the support of two children. It states that the guidelines shall be applied unless there is reason to deviate. However, at the time of the entry of the agreed order, the last sentence of section 505 stated: "The guidelines may be exceeded by the court without express findings, or by agreement of the parties." (Ill. Rev. Stat. 1987, ch. 40, par. 505(a)(2).) In the present case the parties entered an agreed order, the court was not asked to make specific findings, nor under the circumstances was there any reason for the trial court to do so. Goncher had counsel present at the time the order was entered and Goncher's acquiescence is apparent by his signature on the face of the order.

At the hearing on the motion to vacate, Goncher's counsel stated that the fraudulent misrepresentation, incompetency and gross disparity in positions were not present in this case. Goncher's counsel went

on to state: "[H]owever, I did allude to the fact that this particular set of facts may come under the coercion and/or newly discovered facts; tests that are set forth in *Haber*." Goncher's counsel argued:

> "Basically what I had said in my brief, I am sure the Court had reviewed that, that the defendant, Francis Goncher, Jr. at the time that he entered into the agreement was again mistakenly under the assumption that the Court's recommendation as based on what the Court perceived as twenty-five percent of his net income and Mr. Goncher knowing what the court's guidelines are and what the statute specifically stated, that he would be responsible for twenty-five percent for two children, he therefore, agreed to it."

Goncher's counsel also argued that if the court felt that the requirements set forth in *In re Haber* (1981), 99 Ill. App. 3d 306, 425 N.E.2d 1007, had not been met by the facts in the present case, the fact that there was a mistake by one of the parties (namely Mr. Goncher) was an important fact, and as a result of his mistake, there was no meeting of the minds as to that contract and, therefore, there was no contract.

The trial court made the following findings: that it was clear that this was an attempt to vacate what was clearly an agreed order; that for the court to step in and intervene on an agreed order would require something extraordinary, specifically as is set forth in the case of *In re Haber* (1981), 99 Ill. App. 3d 306, 425 N.E.2d 1007; that it was clear from the facts that there was no fraudulent misrepresentation; that "given the financial disparity between the parties here, it would be extremely difficult[ ] to even make a thin argument with respect to coercion"; and that "if there would be an argument on the gross disparity between the capacities of the parties, *** would not serve the moving party in this case"; and regarding newly discovered evidence "[t]he Court finds, its [*sic*] impossible to find that there wasn't anything previously discovered or gone over or threshed out competently by both sides here, so there wasn't even a hint of any such problem."

The court further stated:

> "So we are then left with the one material issue and that is the issue of a unilateral mistake of material fact that was made by Mr. Goncher. The Court in following general principles of contract law; again is that is a unilateral mistake or misconception on his part. And there is an issue whether or not it is a mistake of fact, a mistake of opinion, but does rise to—nor can it be said under any circumstances to rise to fraud."

The trial court concluded by stating that it was compelled to follow the *Haber* case.

▮ Evidence that an agreement was entered into because of coercion, fraud or duress must be clear and convincing in order for courts to set aside the agreement. (*In re Marriage of Carlson* (1981), 101 Ill. App. 3d 924, 930, 428 N.E.2d 1005; see also *In re Marriage of De Frates* (1980), 91 Ill. App. 3d 607, 414 N.E.2d 1188.) Goncher alleged coercion not based on physical threat, but the coercion present and resulting from a combination of mistake of fact and stress of avoidance of a prolonged and emotional trial. We find no merit to this argument. The mistake Goncher alleges was his own. Furthermore, Goncher's desire to avoid a trial was a matter of his own choosing, not the type of coercion that would allow a court to set aside an agreement. We also find that Goncher's argument as to newly discovered evidence lacks merit. We agree with the trial court's analysis that "there wasn't even a hint of any such problem."

Goncher maintains that he agreed to the November 17 order only because he erroneously believed that the amount of support was required by law. To entitle one to equitable relief for one's unilateral mistake of law, the mistaken party must show, in addition to his mistake as to his or her legal rights or responsibilities prior to entering a transaction, some wrongful conduct by the nonmistaken party that induced the mistaken party to act in favor of the nonmistaken party. (*Herget National Bank v. Theede* (1989), 181 Ill. App. 3d 1053, 1057-58, 537 N.E.2d 1109, 1112, citing *Bayne v. Cinak* (1925), 320 Ill. 23, 28, 150 N.E. 344, 346.) Goncher, the mistaken party, made no showing in the trial court or in this court that Cheryl, the nonmistaken party, committed any wrongful conduct that induced Goncher to sign the agreed order. Goncher is not entitled to have the November 17 order vacated due to his unilateral mistake.

The parties in this case entered an agreed order. At the time, Goncher had the benefit of counsel. Furthermore, Goncher signed the order. We find no evidence of fraud, coercion or unconscionability. Accordingly, we find that the trial court properly denied Goncher's motion to vacate the November 17, 1989, order.

## SECTION 2—1401 MOTION

A section 2—1401 motion is a statutory procedure by which judgments may be vacated after 30 days but not later than two years after the entry thereof. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1401.) The trial judge concluded that the section 2—1401 petition in this case was insufficient to satisfy relief.

For the following reasons, we agree with the decision and reasoning of the trial court.

A section 2—1401 petition arises out of the same proceeding in which the order or judgment that it is directed to was entered, but it is a collateral attack on such judgment. (*City of Des Plaines v. Scientific Machinery Movers, Inc.* (1972), 9 Ill. App. 3d 438, 442, 292 N.E.2d 154, 157.) The purpose of a former section 72 motion (now section 2—1401 (Ill. Rev. Stat. 1989, ch. 110, par. 2—1401)) is to bring before the trial court facts not appearing in the record which if known to the court at the time judgment was entered would have prevented its entry. *Lacey v. Lacey* (1974), 24 Ill. App. 3d 776, 778, 321 N.E.2d 524.

The courts in Illinois have repeatedly held that eligibility for relief under section 72 (now section 2—1401) rests solidly upon the requirement that petitioner act with due diligence so that his failure to avail himself of the remedy resulted from no fault or negligence of his own. *Diacou v. Palos State Bank* (1976), 65 Ill. 2d 304, 310, 357 N.E.2d 518; *People ex rel. Lampkin v. Brown* (1980), 81 Ill. App. 3d 869, 401 N.E.2d 1171.

■ A legally sufficient section 2—1401 petition must affirmatively set forth specific factual allegations supporting each of the following elements: (1) a meritorious claim or defense; (2) due diligence in presenting the claim in the original action; and (3) due diligence in filing the section 2—1401 petition for relief. (*Thompson v. I F A, Inc.* (1989), 181 Ill. App. 3d 293, 298-99, 536 N.E.2d 969; *Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 220-21, 499 N.E.2d 1381.) The petitioner must also show by a preponderance of the evidence that through no fault or negligence of his own an error of fact or a valid defense or claim was not made to appear to the trial court at the time the challenged judgment order or decree was entered. *In re Estate of Nakaerts* (1984), 125 Ill. App. 3d 862, 466 N.E.2d 1325.

This section does not afford a litigant a remedy whereby he may be relieved of the consequences of his own mistakes or of the negligence of his trial counsel. (*Lammert v. Lammert Industries, Inc.* (1977), 46 Ill. App. 3d 667, 360 N.E.2d 1355.) A party must follow his case, and section 2—1401 will not save a party from his or his lawyer's fault or negligence. *Sidenstricker v. Dobbs* (1982), 110 Ill. App. 3d 620, 442 N.E.2d 924.

■ Goncher states that: "Equity is offended by the terms of the November 17th order." We disagree. In 1986, in an earlier paternity action (85 M1 99911) brought by Cheryl on behalf of Heather, Goncher had been ordered to pay $266.67 per month as support and in

1987 that sum had been increased to $310 per month. Goncher argues that this was substantial evidence that the November 17 award of $3,000-per-month support for Heather and Christa was excessive as well as being in excess of the guidelines. We reject Goncher's argument.

A review of the record discloses that the 1986 order in the previous case was an agreed settlement order, settling the rights arising between Goncher and Nicholas Joseph D'Andrea, Steven Mitchell D'Andrea, Heather Graziani (Goncher), and Cheryl. That order provided for a cash settlement in excess of $100,000 and for payment of $266.67 in child support per child until each child reached the age of majority. The order further provided that upon termination of any support obligations for Steven Mitchell D'Andrea, child support for Heather would then be raised to $300 per month. The previous support order is not substantial evidence that the November 17 award was excessive as well as in excess of the guidelines. The 1986 order was an agreed order and this court is not aware of the circumstances surrounding the entry of the 1987 order. This court cannot determine from the previous orders whether or not $3,000 per month for the support of Christa and Heather is in excess of the guidelines. Furthermore, whether or not the amount exceeds the guidelines is not relevant in this case since the November 17 order was an agreed order. As stated numerous times in this opinion, both parties were present at the pretrial when the settlement agreement was reached, each party had the benefit of counsel and each party signed the agreed order prior to its entry. The only matter that we find the previous child support order to be substantial evidence of is the fact that Goncher was not a novice to actions involving child support.

■ Goncher maintains that it is undisputed that the sum awarded as support is approximately 50% of his net income. In his affidavit Goncher states: "That the figure $3000.00 as and for monthly child support represents a figure of approximately 50% of his net monthly income ***." We find nothing in the record or Goncher's brief to substantiate his actual income. Moreover, even if $3,000 was approximately 50% of Goncher's net income at the time the order was entered, Goncher has not shown that this would have prevented the entry of the agreed order.

In *Welfelt v. Schultz Transit Co.* (1986), 144 Ill. App. 3d 767, 494 N.E.2d 699, the court held that the plaintiff who was present at the settlement conference and initially approved settlement amounts, but later changed his mind, was not entitled to petition for relief from the judgment as a remedy for his belated change of mind. The court in

*Lofendo v. Ozog* (1983), 118 Ill. App. 3d 237, 454 N.E.2d 806, found that the grounds asserted in the petition to vacate the judgment of dismissal, *i.e.*, that plaintiff, after discussing the case with various members of her family, decided that the amount offered in settlement was unacceptable, were not sufficient to justify vacation of such judgment more than 30 days after its entry.

Relief can be granted with respect to consent orders under section 2—1401 and " 'must be judged by the broad equitable considerations which govern all Section 72 [now 2—1401] petitions.' " (*Lubowsky v. Skokie Valley Community Hospital* (1979), 79 Ill. App. 3d 909, 914, 398 N.E.2d 1037, quoting *City of Des Plaines,* 9 Ill. App. 3d at 443.) In denying Goncher's section 2—1401 petition, the court found

> "that at entry of 11/17/89 order both sides were adequately represented by able and competent counsel; that before court entered the widest latitude of discovery was allowed for both sides; that order entered was with the direct consent of both parties, both parties being present during the day long negotiations and both parties signing the order prior to its entry; that the order was fair and equitable being a complete adjudication of all issues; that the court considers and rejects the legal and equitable arguments raised by respondent's [Goncher's] counsel; that the order was agreed to by both parties."

A decision involving a petition to vacate filed under section 2—1401 of the Code of Civil Procedure will not be disturbed on appeal absent an abuse of sound legal discretion by the trial court. (*Thompson v. I F A, Inc.* (1989), 181 Ill. App. 3d 293, 296, 536 N.E.2d 969; *Lubuowsky v. Skokie Valley Community Hospital* (1979), 79 Ill. App. 3d 909, 916, 398 N.E.2d 1037; *City of Des Plaines v. Scientific Machinery Movers, Inc.* (1972), 9 Ill. App. 3d 438, 443-44, 292 N.E.2d 154.) After a careful review of the record, we find that the trial judge properly reviewed the section 2—1401 petition and considered all relevant criteria. We do not find an abuse of discretion on the part of the trial judge.

Accordingly, for all the reasons set forth above we affirm the decision of the trial court.

Judgment affirmed.

LORENZ, P.J., and McNULTY, J., concur.