MARY VIRNIG KNUDSEN, Plaintiff-Appellant, *v.* ARLINGTON
HEIGHTS FEDERAL SAVINGS AND LOAN ASSOCIATION,
Defendant-Appellee.

First District (5th Division)    No. 80-2389

Opinion filed October 16, 1981.

George E. Brogan, of Evergreen Park, for appellant.

Anderson, Drolet, McDonnell & Miller, of Chicago, for appellee.

Mr. JUSTICE LORENZ delivered the opinion of the court:

The primary issue in this appeal is whether a judge assigned to the chancery-divorce division of the Circuit Court of Cook County had "jurisdiction" to grant a petition for withdrawals from a minor's account. The disputed account was opened by and subject to court order, as provided in section 323a (now section 24—21) of the Probate Act (Ill. Rev. Stat. 1969, ch. 3, par. 323a, now Ill. Rev. Stat. 1979, ch. 110½, par. 24—21). Plaintiff argues that only a judge assigned to the probate division had "jurisdiction" to grant the withdrawal petition permitted by this section.

Additionally, plaintiff argues that a guardian ad litem had to represent her during proceedings on a withdrawal petition. We disagree with both contentions, and the order entering judgment for defendant is affirmed. The following facts are material to our decision.

Plaintiff was injured in 1963 when she was six years of age, and a minor's estate was opened so that a tort action could be prosecuted on her behalf. In April of 1964, a circuit court judge assigned to the probate division approved a compromise and settlement of the tort action. Among other things, the 1964 order instructed plaintiff's guardian to deposit the net proceeds of the settlement, $3,471.21, in an account with defendant, Arlington Heights Savings and Loan Association, "subject to further order of court." After disbursement vouchers were filed, the court discharged the guardian from further duty.

In 1970, while plaintiff was still a minor, her mother petitioned to have the settlement proceeds used to pay a child psychiatrist and a reading clinic for services rendered to plaintiff. On March 3, 1970, the petition was granted by a circuit court judge who was assigned to the chancery-divorce division.

This order states that plaintiff's parents appeared in open court and that evidence was heard on the petition. In addition, the order recites that the court held a conference which included the attorneys who represented each parent, a school psychologist, a child psychiatrist, and a reading clinic employee.

Although a guardian ad litem was not appointed to represent her during the proceedings on the withdrawal petition, plaintiff concedes that the expenditures authorized by this order "were essential to [her] health and well-being * * *." Eventually all the money in the account was used to pay for these services.

There is no suggestion that these funds were not used for the specified services, and no question is raised about the amounts charged for the services. Nevertheless, when plaintiff reached adulthood she filed an action against defendant seeking to recover the entire $3,471.21 on the

grounds that only an order from a judge assigned to the probate division could authorize defendant to permit withdrawals from her account. This matter proceeded as a bench trial and, after submission of an agreed statement of the facts, the court entered judgment for defendant.

OPINION

Effective January 1, 1964, the judicial article of the 1870 Illinois Constitution was almost totally revised. (G. Braden and R. Cohn, The Illinois Constitution: An Annotated and Comparative Analysis 327 (1969).) Before this constitutional reform, the citizens of Illinois were confronted with a confusing array of circuit, superior, county, probate, criminal, police magistrate, and justice of the peace courts. (Braden and Cohn, at 330.) It was not unusual for an appellate tribunal to declare, after years of litigation, that the judgment of one of these courts was void for lack of jurisdiction. (Braden and Cohn, at 330.) This was one of the reasons why the provision for a unified trial court of unlimited original jurisdiction was described as "Perhaps the most significant innovation of the proposed Judicial Article * * *." (Mulliken, *The Unified Trial Court*, 50 Ill. Bar J. 668 (1962).) Another commentator wrote that, "The new proposal holds out bright hope for escape at last from the creeping paralysis of the court system in Illinois." Chandler, *The New Judicial Article for Illinois*, 50 Ill. Bar J. 654 (1962).

Under the 1964 reform, the old jurisdictional problems were eliminated: "A suit cannot be filed in the wrong court because there is only one trial court." (Braden and Cohn, at 331.) This restructuring of the Illinois court system was so successful that it was almost totally incorporated by the 1970 Illinois Constitution. Cohn, *The Illinois Judicial Department— Changes Effected by the Constitution of 1970*, 1971 U. Ill. L. F. 355-56.

Despite these constitutional reforms, plaintiff claims that the probate division of the circuit court had "exclusive jurisdiction" over petitions for withdrawals from the accounts of minors. Plaintiff finds support for this contention in General Order 2.1(V) of the chief judge of the Circuit Court of Cook County. This order provides that proceedings concerning the estates of minors should be assigned to the probate division. Both the 1964 amendment to the judicial article of the prior constitution and the present constitution authorize the chief judge of each circuit to provide for specialized trial court divisions. Ill. Const. 1970, art. 6, §7(c); Ill. Const. 1870, art. 6, §8 (as amended, effective January 1, 1964).

■■ Our initial response to plaintiff's argument is to note that the General Order 1—3(b) of the Circuit Court of Cook County provides that no final order shall be "vacated, set aside or invalidated" on the grounds that the matter was filed or heard in the "wrong" division. Moreover, both the present and prior constitution, as amended, specify that the power to

create specialized trial court divisions is subject to the authority of the supreme court. It is, therefore, important to note that Supreme Court Rule 132, which became effective January 1, 1964, as Rule 9(1) (Ill. Rev. Stat. 1965, ch. 110, par. 101.9(1)) and which has not been changed, provides that:

> "Every complaint or other paper initiating any civil action or proceeding shall contain in the caption the words 'at law,' 'in chancery,' 'in probate,' 'small claim,' or other designation conforming to the organization of the circuit court into divisions. *Misdesignation shall not affect the jurisdiction of the court."* (Emphasis added.) Ill. Rev. Stat. 1979, ch. 110A, par. 132.

The supreme court clearly anticipated that, as in this case, litigants would argue that general orders providing for specialized trial court divisions have resurrected, in Illinois, separate trial court systems of limited and exclusive jurisdiction. But to hold that a judge did not have jurisdiction to grant the petition in this case merely because he was assigned to one division or another would reinfect our unified trial court with the same creeping paralysis that threatened the Illinois judicial system before 1964.

■■■ We conclude that it necessarily follows from Supreme Court Rule 132 that the filing of an action or proceeding in the wrong division does not affect the jurisdiction of a judge in that division to hear and decide the misfiled matter. (Accord, Fins, *Re-examination of "Jurisdiction" in Light of the New Illinois Judicial Article*, 53 Ill. Bar J. 11 (1964).) We also conclude that the petition for withdrawals in this case was a paper which initiated a proceeding within the meaning of Supreme Court Rule 132. Therefore, even if the petition should have been designated "in probate" and filed in that division, a judge assigned to the chancery-divorce division had jurisdiction to hear and decide the matter.

Plaintiff refers us to *Alfaro v. Meagher* (1975), 27 Ill. App. 3d 292, 326 N.E.2d 545, and *Pepin v. City of Chicago* (1967), 79 Ill. App. 2d 295, 223 N.E.2d 587, but because they do not refer to or consider the effect of Supreme Court Rule 132, we do not find these cases persuasive on the issue presented by this case.

It would not be useful to discuss the pre-1964 cases cited by plaintiff concerning the "continuing" and "exclusive" jurisdiction of trial courts which became extinct on January 1, 1964. These cases merely prove the wisdom of providing for a unified trial court of general jurisdiction.

Plaintiff points out that at one time section 323a of the Probate Act (now section 24—21)—the provision under which the disputed petition was filed—used to refer to "the filing of a verified petition * * * in the probate court." (Ill. Rev. Stat. 1963, ch. 3, par. 323a.) However, plaintiff fails to note that this provision was amended, so that in 1970, when

plaintiff's mother filed the petition in this case, there was no further reference to "probate court." Ill. Rev. Stat. 1969, ch. 3, par. 323a.

■■ The second issue raised on appeal is whether the order granting withdrawals from plaintiff's account is invalid on the grounds that a guardian ad litem was not appointed to represent her during the proceedings on the petition. We note that section 323a (now section 24—21) does not require that a guardian be appointed to represent a minor during proceedings on a petition for withdrawals. Instead, the petitioner is required to seek court approval and to "furnish such evidence of the necessity for the withdrawal as the court may require." This procedure was obviously designed to protect the interests of the minor without *requiring* the court to appoint a guardian in every case.

■■ It is, however, important to note that our ruling does not take away from the court's authority to appoint a guardian of the estate or person of a minor whenever it appears necessary or convenient. (Ill. Rev. Stat. 1979, ch. 110½, par. 11—5(a).) We merely recognize that appointment of a guardian might be unnecessary in light of the protection afforded to a minor under section 24—21. For example, in this case plaintiff concedes that the expenditures for educational and psychiatric services were "essential to [her] health and well being * * *." It is inconceivable that a guardian ad litem would have opposed a petition for services which were so crucial to plaintiff. And, as we pointed out earlier, no issue is raised about the amounts charged for these services. We simply fail to see how a guardian ad litem could have protected plaintiff's interests more thoroughly than the trial court did. There is no showing that appointment of a guardian ad litem would have changed the result other than by generating unnecessary fees and expenses. Therefore, we see no error in having declined to appoint a guardian ad litem.

For the preceding reasons the judgment of the circuit court is affirmed.

Affirmed.

SULLIVAN, P. J., and MEJDA, J., concur.