STEPHANIE BURTON, a Minor, by Lou Ada Burton, indiv. and as her Mother and Next Friend, Plaintiffs-Appellees, v. EVELYN ESTRADA, Defendant-Appellant (The Upjohn Company, *et al.*, Defendants).

First District (2nd Division)   No. 85—2425

Opinion filed November 18, 1986.

Wildman, Harrold, Allen & Dixon, of Chicago (Kay L. Schichtel and Orna L. Shulman, of counsel), for appellant.

Goldberg & Goldberg, of Chicago (Barry D. Goldberg and David A. Novoselsky, of counsel), for appellees.

JUSTICE SCARIANO delivered the opinion of the court:

Appellant, Dr. Evelyn Estrada, appeals under Supreme Court Rule 304(b)(3) (103 Ill. 2d R. 304(b)(3)), from the grant of a section 2—1401 petition (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401), which

vacated a dismissal order and reinstated her as a defendant in this case. We affirm.

On January 16, 1979, plaintiffs, Stephanie Burton, a minor, and her mother, Lou Ada Burton, filed suit against appellant and two drug manufacturers, Merck, Sharp & Dohme and The Upjohn Company. Plaintiffs alleged that Stephanie was born on March 11, 1977, with congenital anomalies of the genitourinary tract because her mother had been taking two drugs, Hydrodiuril and Provera. Plaintiffs charged that appellant committed medical malpractice by negligently prescribing the two drugs, and they also asserted separate claims against the drugs' manufacturers under strict liability and negligence theories.

Discovery proceeded and appellant gave a deposition in Chicago, which was not completed. On January 28, 1985, the parties appeared before Judge James E. Murphy for a pretrial conference, and he set the cause for further pretrial proceedings on March 18, 1985. At the March 18 meeting, May Griffioen, a partner in the firm of Goldberg & Goldberg, appeared for plaintiffs and Kay Schichtel represented appellant. On the same day, Judge Murphy entered an order that dismissed the case against appellant with prejudice. The order stated:

> "This cause coming on for pre-trial, all parties being represented by counsel,
>
> IT IS HEREBY ORDERED THAT:
>
> (1) This cause is dismissed with prejudice and without costs to the parties with respect to Dr. Evelyn Estrada only, all matters in controversy having been settled between Dr. Estrada and plaintiffs;
>
> (2) This matter shall continue as to all other parties;
>
> (3) All discovery against Upjohn will be stayed until after the next pre-trial;
>
> (4) Further pre-trial is set for September 17, 1985 at 11:30 a.m. before Judge Murphy."

Because there was no Rule 304(a) finding of no just reason to delay appeal or enforcement, this dismissal order was not enforceable or appealable at the time it was entered. See 103 Ill. 2d R. 304(a).

On April 1, 1985, appellant's attorney, Kay Schichtel, mailed a letter to May Griffioen and enclosed documents identified as a release of attorney's lien, covenant not to sue and indemnity agreement, and a copy of the dismissal order entered on March 18, 1985. The letter concluded:

> "You mentioned at the pre-trial that this portion of the settlement would be placed in an interest-bearing account. I think

that we should have the name of the bank on the check, along with your firm's name and that of Mrs. Burton. Please let me know the name of the bank or other repository of the funds. I will then request the settlement draft in the amount of $100,000.00."

Barry Goldberg, of Goldberg & Goldberg, wrote a letter to Ms. Schichtel, on April 4, 1985, in which he asserted that the "releases" were forwarded to his office prematurely. Goldberg advised Schichtel that he could not consider a settlement until the discovery and evidentiary depositions of appellant had been completed, with appellant's testimony "being as you led me to believe it would be."

To prepare for a deposition of appellant, defendant Upjohn filed a motion to compel Mrs. Burton to produce the calendar diary that she kept before Stephanie's birth, to help pinpoint the date of conception. In its motion, mailed May 9, 1985, Upjohn recited that Dr. Estrada had been previously dismissed by court order.

A hearing on Upjohn's motion was set for June 3, 1985, before Judge Murphy. Barry Goldberg appeared for plaintiffs. Later that day, he filed a section 2—1401 petition (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401), asking that the March 18 dismissal order be vacated. The petition, not accompanied by affidavits or other materials, stated in part that plaintiffs had never agreed to settle their case with appellant and had not executed any documents reflecting a settlement. Rather, in an April 4, 1985, letter, their attorneys had informed appellant that a settlement could not be reached until discovery was completed. Therefore, the petition asserted, the dismissal order of March 18, 1985, was not an agreed order.

Counsel for appellant filed a response to the petition and a request that plaintiffs be directed to identify a repository for the settlement funds. An affidavit by attorney Kay Schichtel was incorporated in the response. In it she stated that she attended the pretrial conference of January 28, 1985, before Judge Murphy, and that Barry Goldberg of Goldberg & Goldberg, representing plaintiffs, made a settlement demand of $6 million against all defendants. The next day, Schichtel received a call from Judge Murphy advising her that Mr. Goldberg was now interested in a partial settlement with appellant. Schichtel then added:

"(6) I attended a further pre-trial conference before Judge Murphy on March 18, 1985. *** May Griffioen was present for plaintiff.

(7) I drafted the order of March 18, 1985 in the presence of all counsel.

\* \* \*

(9) When I did not hear from Goldberg & Goldberg regarding the repository of the funds, I prepared the settlement documents and mailed them on April 1, 1985 to Goldberg & Goldberg with the dismissal order. \*\*\*

(10) On April 3, 1985 I received a call from Mr. Goldberg stating that he wanted to take Dr. Estrada's evidence deposition before settling the case with her. I told Mr. Goldberg that this was not my understanding and that I had arranged for tender of the policy based upon a demand for its payment."

Plaintiffs next obtained leave to supplement their petition with affidavits. In his affidavit, attorney Barry Goldberg stated that he had been responsible for handling the case since it was filed in 1979. He indicated that he attended the January 28, 1985, pretrial conference and afterwards spoke with Judge Murphy about the current status of the child plaintiff. He told the judge that plaintiffs could not accept a partial settlement with appellant until the completion of both her discovery and evidentiary depositions. Goldberg added:

"6. At no time did I authorize or request Judge Murphy to attempt to get the Defendants to tender the $100,000 policy of insurance as to Dr. Estrada.

\* \* \*

8. I never saw a copy of the Order claimed to have been entered in this matter until June 3, 1985, when I was first made aware of its entry nor did I know that any such order was entered.

9. On April 3, 1985, I spoke with Kay Schichtel and told her that in order to go to the next pre-trial I needed both the discovery and evidentiary depositions of Dr. Estrada to be completed and that no consideration of any possible settlement as to her client could be entertained and that I made this known to Judge Murphy as well.

10. At no time during this conversation did Miss Schichtel make any reference to any dismissal order having been entered nor of releases being sent.

\* \* \*

13. I made it clear \*\*\* that if the Doctor did not testify along the lines she and I had on other occasions discussed I could not let her client out.

14. At no time during the April 3, 1985 conversation did Miss Schichtel make any reference to the policy already having been tendered to the Court nor to me for settlement

based upon a demand for its payment.

\* \* \*

16. That at no time did Judge Murphy ever make known to me that any negotiations regarding the tendering of the policy had been reached."

No affidavit from May Griffioen was presented because she had died suddenly and unexpectedly on June 5, 1985.

A hearing was held before Judge Murphy on the petition to vacate and on defendant Upjohn's discovery motion on July 11, 1985. Mr. Goldberg offered to waive oral argument on the petition. The circuit judge then stated that this was a matter of a misunderstanding and that the order entered in the presence of Ms. Schichtel and a representative of Mr. Goldberg's office was negotiated in good faith between both of them. The judge then addressed Mr. Goldberg, adding:

"It's apparent that there had not been a conference with you as the head of that office and with your client. This is something that was done without authority on the part of Ms. Griffioen. And because you are the attorney of record and Ms. Griffioen was acting in your behalf, it is a difficult situation of whether she had authority to do—to enter into the agreement.

But I would have to go on record in saying that there was an agreement between Ms. Schichtel and Ms. Griffioen, the doctor would be dismissed. And it would appear though that this was done without the client's authority and approval. She is the client, and the client now has indicated that she does not want that doctor dismissed. I'd have to vacate the order dismissing the doctor."

Ms. Schichtel asked to comment, and the parties proceeded to argue the case. Afterwards, the judge vacated the March 18 order, stating that his recollection of the discussion at the time of the entry of the order was that appellant's counsel wanted an agreement to dismiss the case before appellant would give her deposition in Washington.

"Ms. Griffioen at that time I recall her saying she didn't think it made that much difference, but if that's what you wanted, she would make an agreement to it and that she would work it out.

So that it was definitely not with anyone's permission that she did that. She was going to work it out. And as the circumstances subsequently arose, she was not able to work it out. And that's the reason for my ruling on it."

Appellant filed a timely notice of appeal from this order, pursuant to

Supreme Court Rule 304(b)(3) (103 Ill. 2d R. 304(b)(3)).

 We first consider appellant's argument that plaintiffs failed to act with diligence in filing their petition. A section 2—1401 petition arises out of the same proceeding in which the order or judgment that it is directed to was entered, but it is a collateral attack on such judgment. (*City of Des Plaines v. Scientific Machinery Movers, Inc.* (1972), 9 Ill. App. 3d 438, 442, 292 N.E.2d 154, 157; Ill. Rev. Stat. 1985, ch. 110, par. 2—1401(b).) To obtain relief under section 2—1401, a party must show (1) that he or she has a meritorious claim or defense and (2) that he or she has exercised due diligence. (*M. L. C. Corp. v. Pallas* (1978), 59 Ill. App. 3d 504, 510, 375 N.E.2d 560, 565.) Furthermore, the diligence requirement has two components. Parties seeking relief under section 2—1401 must demonstrate both that the adverse judgment was not entered due to their own inexcusable neglect and that they were diligent in presenting the petition attacking the judgment. *Lammert v. Lammert Industries, Inc.* (1977), 46 Ill. App. 3d 667, 673-77, 360 N.E.2d 1355, 1360-63.

 With the attorney's approval, a valid dismissal order can be entered without proof of client consent (see *Szymkowski v. Szymkowski* (1982), 104 Ill. App. 3d 630, 633, 432 N.E.2d 1209, 1211; see also *Hudson v. Thies* (1963), 27 Ill. 2d 548, 550-51, 190 N.E.2d 343, 344-45), but a subsequent demonstration that such consent was lacking can be a proper basis to vacate such a dismissal order under section 2—1401 (see *City of Des Plaines v. Scientific Machinery Movers, Inc.* (1972), 9 Ill. App. 3d 438, 444, 292 N.E.2d 154, 158. *Cf. also Lofendo v. Ozog* (1983), 118 Ill. App. 3d 237, 241-42, 454 N.E.2d 806, 810-11; *Mitchell v. Seidler* (1979), 68 Ill. App. 3d 478, 480-81, 483-84, 386 N.E.2d 284, 285, 287 (both denying relief)). A pretrial conference is intended to simplify the issues before trial (87 Ill. 2d R. 218)), and settlement frequently results (*Fennema v. Vander Aa* (1968), 93 Ill. App. 2d 162, 166, 236 N.E.2d 409, 411, *rev'd on other grounds* (1969), 42 Ill. 2d 309, 247 N.E.2d 409). As in any agency relationship, a client can ratify the action of his or her attorney after it has been taken. (4 Ill. L. & Prac. *Attorneys & Counselors* sec. 102 (1971).) Appellant does not dispute that the prejudgment prong of the diligence requirement has been met. Consequently, we conclude that the judge did not abuse his discretion in finding that plaintiffs were not neglectful in permitting initial entry of the dismissal order at the pretrial conference.

 On the other hand, plaintiffs' lack of diligence after the dismissal order was entered presents a closer question, and the con-

tention of plaintiffs' attorneys that they were diligent in seeking to vacate the dismissal order approaches the realm of pure fantasy.[1] Mr. Goldberg asserted in his affidavit that he had been the attorney responsible for handling the case since 1979 and that he did not see a copy of the dismissal order until June 3, 1985. Plaintiffs now argue that they should be considered to have been diligent because they filed this petition to vacate as soon as Goldberg learned that appellant had been dismissed. Plaintiffs have cited no authority that a dismissal is inoperative until the lead attorney learns of it. In fact, when a client hires an attorney in a partnership, the presumption is that he or she has hired the other attorneys in the firm as well, unless there is an agreement otherwise. (*Smith v. Brittenham* (1884), 109 Ill. 540, 554; *Saltzberg v. Fishman* (1984), 123 Ill. App. 3d 447, 454, 462 N.E.2d 901, 907; *Corti v. Fleisher* (1981), 93 Ill. App. 3d 517, 521, 417 N.E.2d 764, 768. See also *Wright v. McGee* (1970), 131 Ill. App. 2d 522, 525-27, 264 N.E.2d 882, 885-86.) Plaintiffs have presented no evidence that they intended that Goldberg alone represent them. May Griffioen, an experienced attorney and a partner in Goldberg's firm, was present when the dismissal order was entered and agreed to its entry. Notice to an attorney while engaged in his client's business is notice to the client. (4 Ill. L. & Prac. *Attorneys and Counselors* sec. 103 (1971).) Moreover, on April 1, 1985, appellant's attorney, Kay Schichtel, sent a letter addressed to Griffioen that included a copy of the order.

■ Plaintiffs point out that Goldberg's letter to Schichtel on April 4, 1985, manifests that he was unaware that a dismissal order had already been entered. It is apparently plaintiffs' position that the partners of the firm never talked to each other about the dismissal of appellant, made in exchange for payment of the limits of her liability insurance policy, in a case in which they had made a $6

---

[1]Plaintiffs proceeded by labelling their vacatur request as a petition under section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401). Under Supreme Court Rule 304(a) (103 Ill. 2d R. 304(a)), a judgment as to one claim or party, in a multiple-party or multiple-claims case, is subject to revision at any time absent a special finding of appealability or an order disposing of the remaining claims or parties, and it is likely that plaintiffs could have moved to vacate the dismissal order without filing a section 2—1401 petition or satisfying its prerequisites. (See *Castro v. Chicago, Rock Island & Pacific R.R. Co.* (1980), 83 Ill. 2d 358, 362-63, 415 N.E.2d 365, 367-68, *cert. denied* (1981), 452 U.S. 941, 69 L. Ed. 2d 956, 101 S. Ct. 3086; *Mares v. Metzler* (1980), 87 Ill. App. 3d 881, 409 N.E.2d 447; *Hazel v. Hayes* (1973), 14 Ill. App. 3d 292, 302 N.E.2d 458.) In such a case, Supreme Court Rule 304(b)(3) would not provide this court with a basis for hearing this appeal.

million demand. This is immaterial, for knowledge of one member of a law firm is imputed to all of its members. (*People v. Karas* (1980), 81 Ill. App. 3d 990, 995, 401 N.E.2d 1026, 1030; *People v. Grigsby* (1977), 47 Ill. App. 3d 812, 820, 365 N.E.2d 481, 486.) An attorney is responsible for the negligence of others in the firm, and a client can be held accountable for his or her attorney's neglect. (See *Reich v. Breed* (1979), 70 Ill. App. 3d 838, 842, 842 n.*, 388 N.E.2d 994, 997, 997 n.*; *Department of Public Works & Buildings v. O'Hare International Bank* (1976), 44 Ill. App. 3d 934, 936-38, 358 N.E.2d 1308, 1311-12. See also *Link v. Wabash R.R. Co.* (1962), 370 U.S. 626, 8 L. Ed. 2d 734, 82 S. Ct. 1386; Restatement (Second) of Judgments sec. 367, comment c (1982).) Indeed, there is even authority that a litigant has a duty, independent of that of his or her attorney, to follow the progress of the case and to take action when counsel does not. See *Falcon Manufacturing Co. v. Nationwide Brokers, Inc.* (1984), 123 Ill. App. 3d 496, 499-500, 462 N.E.2d 562, 565; *American Consulting Association, Inc. v. Spencer* (1981), 100 Ill. App. 3d 917, 922-23, 427 N.E.2d 579, 584, *cert. denied* (1982), 458 U.S. 1112, 73 L. Ed. 2d 1375, 102 S. Ct. 3495.

On May 9, 1985, The Upjohn Company, another defendant in the case, mailed a motion to compel plaintiffs to produce a diary that Mrs. Burton kept. In its motion, Upjohn recited that appellant had been previously dismissed by court order. Mr. Goldberg appeared for a hearing on the motion on June 3, 1985. It is apparently his position that he did not read paragraph 7 of the motion until that date. This is of no moment, for Goldberg's partner was clearly aware of the dismissal on the day it was entered. Thus, plaintiffs were in the rather awkward position of seeking to reinstate appellant as a defendant and using as an excuse for their delay in filing a petition to vacate the fact that the lawyers who represented them were not communicating with each other.

■ At oral argument before the circuit court, Mr. Goldberg referred to a conversation in April and asserted that there "was a fraud perpetrated upon me by Ms. Schichtel, an unconscionable conduct," because she failed to mention that a dismissal order had been entered, while he was telling her that he could not settle. Such strong language was ill-chosen. Plaintiffs now concede that mere silence by one party about the entry of a dismissal order does not constitute concealment. (See *Schmitz v. Hoffmann* (1978), 61 Ill. App. 3d 130, 132, 377 N.E.2d 1205, 1208.) Goldberg's partner, May Griffioen, was not only present representing plaintiffs when the dismissal order was entered on March 18, 1985, but had agreed to it,

and correspondence was sent to the firm on April 1 and May 9, referring to the dismissal order. Schichtel had no additional duty to tell Mr. Goldberg personally that a dismissal order was entered. Rather, Goldberg had a duty to follow the progress of a case that he was handling irrespective of his opponent's actions. (See *Cooper v. United Development Co.* (1984), 122 Ill. App. 3d 850, 856-57, 462 N.E.2d 629, 634; *Taxman v. Health & Hospital Governing Com.* (1980), 83 Ill. App. 3d 499, 502, 404 N.E.2d 419, 422.) Although May Griffioen's unfortunate death may have complicated this case, Mr. Goldberg learned of the dismissal order at least two days before his partner suddenly and unexpectedly died.

■■ ■ While we are exceedingly troubled by the argument that lack of communication in Goldberg's law firm will support a finding that plaintiffs acted diligently in filing the petition, we will not disturb the circuit court's finding. We review the circuit court's determination as to diligence with a degree of deference, under the "abuse of discretion" standard. (*Steinberg's Department Store, Inc. v. Baysingar* (1980), 86 Ill. App. 3d 1140, 1143-45, 409 N.E.2d 8, 11-12; *Hardesty v. Chicago, Rock Island & Pacific R.R. Co.* (1978), 60 Ill. App. 3d 81, 85, 376 N.E.2d 224, 227.) A petition to vacate an order invokes the equitable power of the trial judge, and we must proceed very cautiously before overturning the decision of a trial court seeking to do justice between the parties before it. (See *Lubowsky v. Skokie Valley Community Hospital* (1979), 79 Ill. App. 3d 909, 916, 398 N.E.2d 1037, 1042; *Resto v. Walker* (1978), 66 Ill. App. 3d 733, 383 N.E.2d 1361.) More important, as we shall discuss in more detail shortly, the interest of a minor forms a large and important part of the instant litigation, and the court has a duty to see that her rights are protected. *Muscarello v. Peterson* (1960), 20 Ill. 2d 548, 555, 170 N.E.2d 564, 569.

■■ Addressing the requirement that a prayer for section 2—1401 relief present a meritorious claim or defense, appellant argues that there is no evidence in the record to support the judge's finding that the Burtons did not consent to the dismissal. No one disputes that Griffioen, an experienced lawyer and a partner in the firm of Goldberg & Goldberg, was present for plaintiffs when the settlement order was agreed upon and entered. While decisions on litigation conduct and tactics may be made by counsel alone (*People v. Wilkerson* (1984), 123 Ill. App. 3d 527, 532, 463 N.E.2d 139, 144), an attorney does not have the power to dismiss and settle a case without the client's express approval (see *City of Des Plaines v. Scientific Machinery Movers, Inc.* (1972), 9 Ill. App. 3d 438, 444, 292 N.E.2d

154, 158). However, as indicated above, although such power must be expressly conferred by the client, the existence of an attorney's authority to settle in open court is presumed unless rebutted by affirmative evidence that such authority was lacking. *Szymkowski v. Szymkowski* (1982), 104 Ill. App. 3d 630, 633, 432 N.E.2d 1209, 1211.

In granting the section 2—1401 petition, the circuit judge alluded to his recollection that Ms. Schichtel said at the March 18 conference that she wanted the dismissal before the doctor's deposition was taken and that Ms. Griffioen replied that she would work it out. From this, the judge apparently inferred that there was something further to be done, presumably with the clients, which Griffioen was unable to "work out." Appellant now argues that the judge abused his discretion in relying on such evidence in finding that the clients rejected the settlement order after it was entered.

It would have been a simple matter for the Burtons, as the named plaintiffs, to submit an affidavit that they did not authorize their attorneys to dismiss the case and did not ratify the settlement agreement once they learned of it. Plaintiffs did not submit such evidence however. The affidavits that were filed in support of plaintiffs' petition do not even refer to Stephanie Burton or her mother. For example, in his affidavit, Mr. Goldberg simply stated that *he* never authorized *Judge Murphy* to ask appellant to tender the $100,000 policy. The petition itself, signed by Goldberg, does declare that "the Plaintiffs have never agreed to settle this case with Dr. Estrada and have not executed any documents reflecting settlement." However, the pleading is unverified and any statements therein do not constitute evidence, except as admissions against the pleading party. (See *Mitchell v. Seidler* (1979), 68 Ill. App. 3d 478, 482-83, 386 N.E.2d 284, 286-87; Ill. Rev. Stat. 1985, ch. 110, par. 2—605(a).) Section 2—1401(b) of the Code of Civil Procedure states, "The petition must be supported by affidavit or other appropriate showing as to matters not of record." (Ill. Rev. Stat. 1985, ch. 110 par. 2—1401.) Plaintiffs, as the petitioners, had the burden of coming forward with evidence to support vacation of the judgment. *Lofendo v. Ozog* (1983), 118 Ill. App. 3d 237, 240-41, 454 N.E.2d 806, 809-10; *Resto v. Walker* (1978), 66 Ill. App. 3d 733, 739, 383 N.E.2d 1361, 1366.

■ Despite the grave questions that appellant raises about the adequacy of the showing that plaintiffs made in the trial court, we affirm the vacation of the dismissal order, which we are entitled to do on any ground supported by the record. (*Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387, 457 N.E.2d 9,

12.) Plaintiff is a minor, and, as such, is a ward of the court when involved in litigation, and the court has a duty and broad discretion to protect her interests. (*Leonard C. Arnold, Ltd. v. Northern Trust Co.* (1985), 139 Ill. App. 3d 683, 689, 487 N.E.2d 668, 671.) The Probate Act of 1975 contemplates the creation of a personal estate for a minor bringing a personal injury action (139 Ill. App. 3d 683, 689, 487 N.E.2d 668, 671), and provides, *"By leave of court \*\*\* a representative \*\*\* may compound or compromise any claim or any interest of the ward \*\*\* in any personal estate \*\*\* upon such terms as the court directs"* (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 110½, par. 19—8). This provision requires court approval of any settlement and is mandatory, because it is intended to substitute a judicial determination for the guardian's personal discretion in order to provide additional protection to the ward. *Mastroianni v. Curtis* (1979), 78 Ill. App. 3d 97, 99-100, 397 N.E.2d 56, 58.

The Probate Act has been held to require that the terms and conditions of any proposed compromise "be submitted to, inquired into, and passed upon by, that court having special jurisdiction of the estate of minors." (*Mastroianni v. Curtis* (1979), 78 Ill. App. 3d 97, 100, 397 N.E.2d 56, 58, quoting *Hayes v. Massachusetts Mutual Life Insurance Co.* (1888), 125 Ill. 626, 636, 18 N.E. 322, 326.) In addition, upon approval of any settlement order in a suit involving a claim of a minor, Circuit Court of Cook County Rule 6.4 requires the judge hearing the case to determine the expenses, including attorney's compensation (not to exceed one-third of the award, or one-half if there is an appeal), and the net amount to be distributed to the minor. The Rule also states that the order approving settlement shall provide that the amount distributable to the minor shall be paid only to a representative of the ward appointed by the probate division and only upon presentation of an order entered in the probate division approving the bond or other security required in connection therewith. (Circuit Court of Cook County Rule 6.4, Illinois Courts Rule Book (1985).) Of course, a circuit judge is not deprived of jurisdiction to issue an order in our unified court system merely because he or she is assigned to a division that does not typically hear such cases. (See *Knudsen v. Arlington Heights Federal Savings & Loan Association* (1981), 100 Ill. App. 3d 1088, 1091, 427 N.E.2d 865, 867.) However, we have no record of the pretrial conference in which the settlement order was entered. Aside from the entry of the stipulated "boiler plate" order of dismissal based upon a settlement between the parties, there is no indication that the terms of the compromise were "submitted to, in-

quired into, and passed upon by the court" before the order was entered, as is required by the Probate Act (*Mastroianni v. Curtis* (1979), 78 Ill. App. 3d 97, 99-102, 397 N.E.2d 56, 58-59), or that the requirements of local Rule 6.4 were otherwise satisfied. The judge did, however, later vacate the settlement dismissal order—this gives him an opportunity to conduct the review mandated by the Probate Act and enter judgment in accordance with the requirements of the circuit court rules should there be any settlement in the future. Fairness to the minor plaintiff now dictates that we maintain the status quo and affirm the judge's decision to allow her to proceed with her action against appellant. The judgment against her mother was entered in the same order as that against the child and is indivisible from it.

The decision of the circuit court granting plaintiffs' petition to vacate the order of dismissal in favor of appellant is affirmed.

Affirmed.

BILANDIC, P.J., and HARTMAN, J., concur.