VLADIMIR SAKUN *et al.*, Plaintiffs-Appellees, v. JONATHAN TAFFER *et al.*, Defendants-Appellants.

First District (5th Division)    No. 1—93—3726

Opinion filed November 10, 1994.

John R. Lundy, Deborah A. Golden, and Susan B. Weiss, all of Schiff, Hardin & Waite, of Chicago, for appellants.

Paul M. Heller and Eric P. Ferleger, both of Heller, Shapiro, Frisone & Ferleger, of Chicago, for appellees.

PRESIDING JUSTICE MURRAY delivered the opinion of the court:

Plaintiffs filed an action seeking an accounting, an injunction, and other relief. The cause of action was dismissed pursuant to the entry of a settlement agreement. Defendants, Jonathan (Jon) and Cheryl Taffer, appeal from the trial court's order that denied their motion to vacate the dismissal order and declare the settlement void, which their attorney, Ira Moltz (Moltz), entered into allegedly without their authority. The relevant facts are as follows.

On February 21, 1992, an agreed order was entered which reset the matter pursuant to settlement negotiations. On March 20, April 29 and June 2, 1992, agreed orders were entered, each stating "the parties have negotiated a resolution of this cause" and resetting the cause for status. On July 9, 1992, an order was entered ordering the defendant to appear in person or through counsel, and stating "defendants shall execute the settlement contract if the indemnifications relating to the Internal Revenue Service are eliminated." The order further reset the cause for status for entry of a settlement contract. On July 24, 1992, an agreed order was entered which reset the cause for status and entry of a settlement agreement. On August

13 and August 27, 1992, agreed orders were entered which stated that the "parties have negotiated a resolution of this cause," resetting the cause for status. On September 10, 1992, an order was entered which stated that the parties have agreed to the proposed settlement with changes only to paragraphs 7(a)(2) and (3) and shall execute the settlement for entry on September 24, 1992. On September 24, 1992, an order was entered which stated that the parties agreed to the proposed settlement with changes only to paragraphs 7(a)(2) and (3) and the settlement shall be executed and tendered to plaintiff's counsel on or before October 5, 1992. On November 30, 1992, an order entered by agreement indicated that the parties had agreed to the proposed settlement with changes only to paragraphs 7(a) and 8; however, if the settlement was not executed by defendants prior to December 4, 1992, it would be void. The record does not contain transcripts from any of the aforementioned dates, nor does the record contain any information as to whether or not defendants were present in court on any of those dates.

On January 5, 1993, the trial court entered an agreed order which ordered that "[p]ursuant to the settlement agreement appended hereto, this cause is dismissed." Attached to the order was a document entitled "Settlement Agreement."[1] The agreement had two signature pages; the first signed by each of the plaintiffs and their attorney, the second purportedly signed by the defendants.

On January 29, 1993, the plaintiffs filed an emergency motion for a rule to show cause to be entered against the defendants as to why they should not be held in contempt for failure to comply with certain terms of the settlement agreement. The trial court set the case for status on February 22, 1993.

On February 22, 1993, the court held the defendants in contempt of court for their failure to comply with orders of the court. Defendants were further ordered to appear on March 15, 1993, on which date the trial court ordered a body attachment to issue against defendants. The parties were ordered to appear on April 5, 1993.

On April 15, 1993, the trial court entered an order which: (1) provided Moltz was to be served with the present order and the previous order; (2) provided Moltz was to provide the current address of the defendants; (3) vacated the prior order of body attachment;

---

[1]The complaint was filed with James McLamore and Michael Midona as plaintiffs and the Taffer Management Group, Inc., Jonathan Taffer and Cheryl Taffer as defendants. The caption on the settlement agreement included Vladimir Sakun as a plaintiff and omitted the Taffer Management Group, Inc., as a defendant.

and (4) issued an alias rule to show cause against defendants returnable on May 13, 1993. On May 13, 1993, the court ordered Moltz to be served with a copy of the order and compelled him to appear on May 19, 1993. Neither Moltz nor the defendants appeared at any of the court dates between January 1993 and May 1993.

On May 19, 1993, Cheryl appeared in court. The court ordered Moltz to appear on June 2, 1993. On May 26, 1993, the law firm of Schiff, Hardin & Waite filed an additional appearance on behalf of the defendants. On June 2, 1993, the trial court entered an order granting the defendants leave to file a motion to vacate the settlement agreement. The body attachment against Cheryl was vacated, but was continued against Jon. The defendants were also granted an additional 14 days to answer the petition for rule to show cause, and the plaintiffs were granted 10 days thereafter to reply.

On June 15, 1993, the defendants filed a petition to vacate the judgment order dated January 5, 1993, and to declare the settlement agreement void.[2] Defendants alleged that they did not authorize settlement of the matter and were not aware of the same. In support of their petition, the defendants attached their own affidavits, the affidavit of Moltz and two letters from defendants to Moltz.

Both Jon's and Cheryl's affidavits stated that they were represented by Moltz and that during late 1992, they were aware that Moltz was engaged in settlement negotiations on their behalf. Jon stated that he saw drafts of proposed settlement agreements and discussed some of those drafts with Moltz by telephone. Cheryl's affidavit indicated that during late 1992 she was aware that Moltz was discussing the possibility of settlement of this action with one of the attorneys for plaintiffs and that during late 1992 and early 1993 she received and reviewed a number of draft settlement agreements and communicated to Moltz comments on them. Both affidavits indicated that neither Jon nor Cheryl authorized Moltz to sign "the form of" settlement agreement on their behalf, nor did either defendant see that form of settlement agreement until February 1993. Cheryl's affidavit stated that on February 3, 1993, she faxed to Moltz her comments on what she believed to be a proposed settlement agreement, indicating in detail various aspects of the agreement that were not acceptable.[3] Jon and Cheryl did not learn that the agreement had been signed by Moltz until May 1993.

---

[2]Within the pleading defendants stated "[t]his petition constitutes the Taffers' response to the plaintiffs' Emergency Motion for Rule to Show Cause."

[3]The petition to vacate indicated that the form of settlement agreement

The affidavit of Ira Moltz stated:

"2. During 1992 and 1993 I have been counsel of record for defendants Jon and Cheryl Taffer in this proceeding. During late 1992 and early 1993, I conducted settlement negotiations on behalf of the Taffers with the attorney for the plaintiffs, Eric P. Ferleger.

3. I agreed to and signed on behalf of the Taffers the Settlement Agreement that was presented to this Court on January 5, 1993. I did so because of an erroneous belief that the form of Settlement Agreement I signed was acceptable to the Taffers. At the time I signed the Settlement Agreement, I did not have authority from the Taffers to agree to or sign that Agreement on their behalf.

4. The Settlement Agreement was not transmitted to the Taffers until sometime after this Court's order of January 5, 1993. Only then did I learn that the form of the Settlement Agreement was, in fact, not acceptable to the Taffers, and that it would substantially interfere with Jon Taffer's ability to earn a livelihood.

5. After the unacceptability to the Taffers of the Settlement Agreement became known to me, I took steps, in conjunction with the firm of Schiff, Hardin & Waite that was hired as additional counsel by the Taffers, to inform this Court that there had been no true agreement among the parties to the terms of the Settlement Agreement."

The first letter attached to the petition was a letter dated February 3, 1993, from Cheryl, via fax, to Moltz, which stated:

"Attached please find the Settlement Agreement you faxed to me this morning. Until my notations have been discussed and agreed upon, neither Jon nor I will execute the agreement."

Also attached was a letter dated May 19, 1993, from Cheryl, via fax, to Moltz which stated:

"Enclosed please find a copy of a court order which was entered into record this morning for your repeated (7x from my understanding from the Judge) failure to appear on our behalf.

After court I spoke with Eric Ferleger who explained to me that a settlement agreement was purportedly entered into record in January along with a motion to dismiss. Please fax this agreement to me *immediately*. *** We do not have a clear understanding of

---

attached to Cheryl's February 3, 1993, letter contains notations reflecting attorney-client privileged information which would reveal to the plaintiffs the Taffers' position on matters which were still the subject of ongoing settlement negotiations. The Taffers indicated that it was for this reason that the marked-up copy was not attached to the petition, but that upon direction by the court, the Taffers would submit said attachment to the court for *in camera* review.

what is going on. Therefore, please provide me with any and all court orders entered in by the courts since December 1, 1992."

Plaintiffs filed an answer to the petition to vacate as well as a reply to the petition for rule. Among the attachments to plaintiffs' answer were several pieces of correspondence between plaintiffs' counsel and Moltz. Included were letters from plaintiffs' counsel to Moltz on each of the court dates subsequent to the entry of the settlement stating that a copy of the order entered on that date was enclosed. Also included were the following: A fax with a transmission date of November 25, 1992, from Moltz to plaintiff's attorney which provides:

"Here is the Sakun-Taffer proposed settlement agreement. Please note the proposed changes on pages 4 & 5. If this is acceptable, we have a deal."

A letter dated February 2, 1993, from plaintiffs' counsel to Moltz requesting to hear from Moltz with regard to both money and documentation regarding a patent. The letter also indicated that a copy of the order entered in his absence was enclosed. A letter dated March 3, 1993, enclosing a copy of the order of that date and reiterating that pursuant to your fax of January 29, 1993, he had given a commitment that his clients would be in compliance within seven days. A fax dated March 15, 1993, from Moltz to plaintiffs' counsel which stated:

"I'm out covering the suburbs today and can't make your court call. I spoke to Taffer and***best on him [sic] to come up with the judgment amount ASAP. He is having money problems which is the basis of the delay. I will do my best to get you as big an amount as possible this week. There is no deliberate attempt to renege on the deal by Taffer—just the normal cash flow difficulties."

Letters from plaintiffs' counsel dated April 19, 1993, and May 13, 1993, enclosing a copy of the most recent orders in the case. A letter dated May 18, 1993, from Moltz to plaintiffs' counsel which stated:

"The enclosed $5,000 check was dropped off to me about 5:00 p.m. Tuesday night. I have endorsed it on the back and am tendering it to you. Taffer will come up with the remaining $2,500 by June 15.

Sorry for the delay, but the guy is short of bucks. If you have any papers you need signed showing he is waiving any interest in the MusicPlan patent in favor of Sakun, get them to me and I will get them signed."

On August 4, 1993, defendants filed a pleading which indicated it was in response to three papers filed by the plaintiffs: (1) a reply to petition for rule; (2) an answer to petition to vacate judgment order; and (3) a memorandum in support of their answer to defendants' pe-

tition to vacate. The second affidavits of Jon and Cheryl were attached in support of the response. Both affidavits stated that beginning in March of 1992 and continuing through February of 1993, Jon and Cheryl received numerous communications in the form of letters and faxes from Moltz concerning possible settlement of the action and that until they learned on May 19, 1993, that a settlement agreement had been agreed to, they believed that settlement negotiations were ongoing. Both Jon and Cheryl stated they never authorized Moltz to settle the case on the terms in the settlement draft attached to Moltz's fax of November 25, 1992. In regard to Moltz's letter dated May 18, 1993, Jon stated that he had no discussion in mid-May regarding providing Moltz with a check or the patent. Cheryl stated that on May 18, 1993, she provided a check to Moltz in the amount of $5,000 because Moltz had requested it as "earnest money" to convince plaintiffs' counsel that defendants were seriously interested in settling the case. As an indication that the check was in anticipation of a future settlement, she made the notation "escrow" on the check.[4] After learning on May 19, 1993, that a settlement agreement had already been signed by Moltz, Cheryl stopped payment of the check.

After hearing, the court denied defendants' petition to vacate.[5] The court found: (1) that the section 2—1401 (735 ILCS 5/2—1401 (West 1992)) petition must plead the existence of meritorious defense or claim, due diligence in presenting the defense to the court in the original action and due diligence in filing the section 2—1401 petition (citing to *Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209); (2) defendants failed to meet the test to vacate as set forth in *Smith v. Airoom, Inc.*; (3) Moltz had apparent authority to act for the defendants by both signing and submitting the settlement agreement to the court; and (4) defendants' cause of action, if any, is against Moltz. The record does not reflect a ruling on the petition for rule.

The defendants filed a timely notice of appeal alleging this court's jurisdiction pursuant to Supreme Court Rules 301(a)(1), 303, and 304(b)(3) (134 Ill. 2d Rules 301(a)(1), 303, 304(b)(3)).[6]

Defendants present two issues for review: (1) whether the trial court erred in holding that an attorney acting with only apparent

---

[4] The record on appeal does not contain a copy of this check.

[5] The transcript from the hearing on the petition to vacate is the only transcript contained in the record.

[6] Supreme Court Rule 304(b)(3) provides that a judgment or order granting or denying any of the relief prayed in a petition under section 2—1401 of the Code of Civil Procedure is appealable without the finding required in Rule 304(a). 134 Ill. 2d R. 304(b).

actual authority can bind clients to a settlement agreement without their consent, and (2) whether the trial court abused its discretion in holding that the Taffers' petition to vacate failed to meet the three-pronged test set forth in *Smith*.

I

Defendants argue the trial court erred in holding that an attorney acting with only apparent authority can bind clients to a settlement agreement without their consent.

In general, a party who retains an attorney holds out the attorney as an authorized agent to receive correspondence and notices, including notice of court proceedings. (*In re Marriage of Clarke* (1990), 194 Ill. App. 3d 248, 251.) Notice to an attorney while engaged in his client's business is notice to the client. (*Burton v. Estrada* (1986), 149 Ill. App. 3d 965, 972.) There is authority that a litigant has a duty, independent of that of his or her attorney, to follow the progress of the case and to take action when counsel does not. (*Burton*, 149 Ill. App. 3d at 973, citing *Falcon Manufacturing Co. v. Nationwide Brokers, Inc.* (1984), 123 Ill. App. 3d 496, 499-500; *American Consulting Association, Inc. v. Spencer* (1981), 100 Ill. App. 3d 917, 922-23.) With the approval of the attorney, a valid dismissal order can be entered without proof of client consent; however, a subsequent demonstration that such consent was lacking can be a proper basis to vacate and for a dismissal order under section 2—1401. *Burton*, 149 Ill. App. 3d at 971.

Defendants cite to *Burton v. Estrada* (1986), 149 Ill. App. 3d 965, 974, for the proposition that in Illinois the authority to represent a client in litigation is separate and independent from the authority to settle a case and *Kazale v. Flowers* (1989), 185 Ill. App. 3d 224, 227, for the proposition that the court and opposing counsel may present authority to settle only in certain limited circumstances, such as when a settlement has been reached in open court with the client present.

These cases do stand for the propositions cited; however, we find the factual situations of the two cases inapplicable to the case at bar. The fact that authority to represent a client in litigation is separate and independent from the authority to settle a case does not preclude an attorney from possessing the authority for both. In *Burton*, the plaintiff was represented by another partner in his counsel's firm when a settlement order was entered. The court noted that the interest of a minor formed a large and important part of the instant litigation and stated that plaintiff was a minor, and, as such, a ward of the court when involved in litigation, and the court had a duty

and broad discretion to protect her interests. (*Burton*, 149 Ill. App. 3d at 976.) In *Kazale* the defendant's attorney entered into settlement negotiations over the phone without the plaintiff's knowledge of any negotiations. The court held that unlike a settlement in open court, there is no case law which holds that an attorney's authority to settle is presumed in settlement negotiations outside of court. (*Kazale*, 185 Ill. App. 3d at 228.) Defendants make much of the fact that they were not present in court when the agreement was entered into; however, if an attorney had the requisite authority to enter into a settlement, the client's presence in court would not be necessary.

The case of *Kalman v. Bertacchi* (1978), 57 Ill. App. 3d 542, involved an appeal from a judgment entered pursuant to a settlement agreement reached by the parties but subsequently repudiated by one of three defendants. Upon leaving the courthouse, one of the defendants disavowed the settlement claiming that it was "unfair" and that he had entered into the agreement believing that the court had recommended the settlement amount. At no time did the other two defendants appear in court or participate in the settlement negotiations. Codefendants objected to enforcement of the settlement and argued that the settlement entered into by the first defendant would not be binding on his codefendants when they were not present, did not participate in negotiations, and did not authorize their attorney to settle litigation. In affirming the judgment the court cited the principle set forth in *Elmore v. Blume* (1975), 31 Ill. App. 3d 643, 647, that the existence of any agency relationship and its nature and extent may be shown by circumstantial evidence, with reference to the situation of the parties, the property and the acts of the parties. (*Kalman*, 57 Ill. App. 3d at 548.) The court held that circumstances of the case constituted events and actions which would reasonably lead a person to believe that the first defendant was acting on behalf of all the defendants. *Kalman*, 57 Ill. App. 3d at 549.

In general, a client is bound by the acts or omissions of his attorney within the scope of the attorney's authority. (*In re Marriage of Marr* (1994), 264 Ill. App. 3d 932, 638 N.E.2d 303.) The authority of an agent may be presumed from the silence of the alleged principal when he knowingly allows another to act for him as his agent, and the agent's scope of authority may be determined by what persons of reasonable prudence, ordinarily familiar with business practices, dealing with the agent, might rightfully believe him to have on the basis of the principal's conduct. Where the principal places an agent in a situation where he may be presumed to have authority to act for her, the principal is estopped as against a third person from denying the agent's apparent authority. *Kalman*, 57 Ill. App. 3d at 549.

In *In re Marriage of Clarke* (1990), 194 Ill. App. 3d 248, the issue presented for review was whether or not a party should be bound by an agreed order at a pretrial when her attorney did not have express authority to agree to the order. The court held that the mother's attorney had actual authority to negotiate a settlement on her behalf and that to the extent the attorney exceeded his express authority, his authority was the logical, implied extension of his express authority.

■ The affidavits of Moltz and the Taffers each acknowledge Moltz's authority to enter settlement negotiations. Settlement negotiations were ongoing for almost a year and during that time Moltz clearly had the authority to negotiate. The defendants admit that they received communications and copies of proposed settlement agreements. The trial court was continually apprised of the pendency of settlement negotiations. The trial court presided over the status of this case and was able to observe the presence or absence of the parties in court, a fact we are unable to discern from the record. The trial court was in a superior position to weigh the evidence concerning defendants' claim. The question in this case becomes whether Moltz had the authority to consummate those negotiations into a finalized agreement. We believe that this authority was the logical implied extension of his express authority. The trial court was correct in finding that Moltz had apparent authority to settle the case. We find no reason to upset the trial court's determination with regard to Moltz's authority to enter into the settlement agreement.

## II

A section 2—1401 motion is a statutory procedure by which judgments may be vacated after 30 days but not later than two years after the entry thereof. (735 ILCS 5/2—1401 (West 1992).) The trial judge concluded that the section 2—1401 petition in this case was insufficient to satisfy relief. Defendants argue the trial court abused its discretion in this holding. For the following reasons, we agree with the decision and reasoning of the trial court and find that the defendants failed to meet the test to vacate as set forth in *Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209.

The purpose of a section 2—1401 petition is to bring before the trial court facts not appearing in the record which if known to the court at the time judgment was entered would have prevented its entry. (*Burchett v. Goncher* (1991), 235 Ill. App. 3d 1091, 1098.)

> "To be entitled to relief under section 2—1401, the petitioner must affirmatively set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious

defense or claim; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2—1401 petition for relief." (*Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 220-21.) The petitioner must also show by a preponderance of the evidence that through no fault or negligence of his own an error of fact or a valid defense or claim was not made to appear to the trial court at the time the challenged judgment order or decree was entered. *Burchett v. Goncher* (1991), 235 Ill. App. 3d 1091, 1098.

Section 2—1401 does not afford a litigant a remedy whereby he may be relieved of the consequences of his own mistakes or of the negligence of his trial counsel, but a court may refuse to impute such negligence to the petitioner where mitigating circumstances are present. (*Lammert v. Lammert Industries, Inc.* (1977), 46 Ill. App. 3d 667, 674.) A party must follow his case; section 2—1401 will not save a party from his or his lawyer's fault or negligence (*Sidenstricker v. Dobbs* (1982), 110 Ill. App. 3d 620, 622), and it is the duty of every litigant to follow the progress of his case rather than to merely assume that his counsel is doing everything which is necessary and proper in the conduct thereof. *Lammert*, 46 Ill. App. 3d at 674.

First, defendants have failed to establish a meritorious defense. Generally, a consent decree is not appealable because it does not constitute a resolution of the parties' rights but is a mere recordation of their private agreement. A consent decree can be set aside only by agreement of the parties or upon a showing that it resulted from fraudulent misrepresentation, coercion, incompetence of one of the parties, gross disparity in the parties' bargaining positions, or newly discovered evidence. (*Burchett v. Goncher* (1991), 235 Ill. App. 3d 1091, 1094-95.) As discussed above, the defendants granted their attorney the authority to negotiate a settlement. We find none of the above factors necessary to set aside a consent decree present in the this case.

Defendants claim that they exercised due diligence in the promptness with which they filed their petition to vacate once they learned of the dismissal order. The Taffers claim that although they followed the progress of their case, they could not have found out about the existence of the settlement agreement and dismissal order sooner because their attorney led them to believe that negotiations were ongoing as late as one day prior to the May 19, 1993, hearing. However, on November 25, 1992, an order was entered which indicated "the parties have agreed to the proposed settlement with changes only to paragraphs 7(a) and 8," and on January 5, 1993, an agreed order was entered dismissing the case. In addition, numerous

orders were entered in the case between January 5, 1993, and May 19, 1993. The Taffers were presumed to have notice of these proceedings.

The Taffers argue that the fact that Moltz's misleading actions prevented the Taffers from alerting the trial court at an earlier time is enough to satisfy the second element of the *Smith* test, due diligence in the original action. The Taffers further argue that even if Moltz's conduct is imputed to the Taffers, the Taffers would still be entitled to relief because this court has repeatedly held that the due diligence standard should be relaxed where the interests of fairness and substantial justice compel the exercise of the equitable powers of this court. *Cohen v. Wood Brothers Steel Stamping Co.* (1991), 227 Ill. App. 3d 354, 360.

The requirement of diligence in presenting the defense in the original or underlying action is relaxed or ignored when the prevailing party has acted unfairly or unconscionably in obtaining its favorable judgment. (*Sidenstricker v. Dobbs* (1982), 110 Ill. App. 3d 620, 623.) Defendants make no such allegation as to plaintiffs' conduct in this case.

The decision to grant a section 2—1401 petition lies within the sound discretion of the trial court and as such, a reviewing court is justified in disturbing the judgment only if it finds that the trial court abused its discretion. (*Smith*, 114 Ill. 2d at 220-21.) After a careful review of the record, we find that the trial judge properly reviewed the section 2—1401 petition and considered all relevant criteria. We do not find an abuse of discretion on the part of the trial judge.

Finally, we note that our decision in this case in no way condones Moltz's actions. We agree with the trial court that the defendants' cause of action, if any, exists against Moltz.

Accordingly, for the reasons set forth above we affirm the decision of the trial court.

Judgment affirmed.

GORDON and McNULTY, JJ., concur.